ELFRIEDA O'MELIA, Plaintiff-Appellant, v. LAKE FOREST SYMPHONY ASSOCIATION, INC., *et al.*, Defendants-Appellees.

Second District   No. 2—98—0353

Opinion filed March 31, 1999.

Michael W. Rathsack, of Law Offices of Michael W. Rathsack, Henry B. Vess III, of Dommermuth, Brestal, Cobine & West, Ltd., and Patricia C. Bobb and Marina E. Ammendola, both of Patricia C. Bobb & Associates, all of Chicago, for appellant.

Kathleen M. Ryan, of Ryan, Ryan & Landa, Ltd., of Waukegan, for appellee Lake Forest Symphony Association, Inc.

Michael J. Fusz and Janelle K. Christensen, both of Tressler, Soderstrom, Maloney & Priess, of Waukegan, and Michael J. Cronin, of Tressler, Soderstrom, Maloney & Priess, of Chicago, for appellee Jordan Lowe.

JUSTICE INGLIS delivered the opinion of the court:

Plaintiff, Elfrieda O'Melia, appeals the order of the circuit court of Lake County dismissing her claim against defendants, Lake Forest Symphony Association, Inc. (the Symphony Association), and Jordan Lowe, as untimely filed. Plaintiff contends that the Symphony Association is not a "local public entity" as defined by section 1—206 of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/1—206 (West 1996)) and is therefore not entitled to use the one-year statute of limitations under section 8—101 of the Act (745 ILCS 10/8—101 (West 1996)). We agree and reverse and remand.

The following facts are taken from the well-pleaded allegations of the complaint, exhibits, and depositions filed in the record. Plaintiff attended a July 4, 1995, concert hosted by the Symphony Association. Plaintiff was transported from the parking area to the lawn in a golf cart provided by the Symphony Association and driven by Lowe. Plaintiff exited the golf cart and was injured when Lowe drove into her and knocked her down.

The Symphony Association is a not-for-profit corporation incorporated in Illinois in 1959. The articles of incorporation state that it was organized for the following purposes:

"civic, recreational, educational and musical purposes including (but without limiting the generality of the foregoing)[:] for the development of and sustaining interest in music in the community of Lake Forest, Lake Bluff and vicinity; to sponsor, present and encourage concerts by school, church and other community orchestral and choral groups; to encourage, sponsor and provide an educational program in music and its appreciation; to do all things necessary or convenient to effect the same."

Pursuant to its bylaws, the Symphony Association is run by a number of committees, including an executive committee and a marketing committee. Its board of directors consists of subscribers

and donors to the symphony. The symphony performs six subscription concerts each year; subscriptions cost $100 to $135 for the year.

The Symphony Association's endeavors include holding concerts by the symphony, music lessons, and school programs. Music lessons are provided through the music institute and, together with symphony performances, generate the largest portion of revenue for the Symphony Association. Additionally, schools pay a fee to the Symphony Association in order to hold a school program. The Symphony Association also raises money by holding an annual benefit, and it receives grants from the Illinois Arts Council and the National Endowment for the Arts. In all, the Symphony Association generates revenues of approximately $1 million each year, using about half of the total revenues to pay musicians' and employees' wages. The Symphony Association also carries its own liability insurance.

The Symphony Association performs a Fourth of July concert every year, which attracts between 4,000 to 6,500 persons. Admission is charged for the concert. The City of Lake Forest does not contribute any money to the concert and, while it allows the Symphony Association to use city facilities to perform the concert, it charges the Symphony Association for the security and cleaning services associated with the concert.

On October 7, 1996, plaintiff filed her complaint against the Symphony Association. On July 2, 1997, plaintiff filed her amended complaint, adding Lowe as a defendant. On August 27, 1997, the Symphony Association filed its motion to dismiss, alleging that plaintiff's suit was untimely filed pursuant to section 8—101 of the Act. Lowe subsequently joined the motion. The trial court granted defendants' motion, finding that the Symphony Association was a local public entity under the Act and that plaintiff's action was filed outside the one-year limitations period. The trial court further found that Lowe was an employee of the Symphony Association for the purposes of the Act. Plaintiff timely appeals.

■ ■ The sole issue on appeal is whether the Symphony Association is a "local public entity" as defined by the Act. This is a case of first impression in this district and requires us to interpret section 1—206.

" 'Local public entity' includes a county, township, municipality, municipal corporation, school district, school board, educational service region, regional board of school trustees, community college district, community college board, forest preserve district, park district, fire protection district, sanitary district, museum district, emergency telephone system board, and all other·local governmental bodies. 'Local public entity' also includes library systems and

any intergovernmental agency or similar entity formed pursuant to the Constitution of the State of Illinois or the Intergovernmental Cooperation Act *as well as any not-for-profit corporation organized for the purpose of conducting public business*. It does not include the State or any office, officer, department, division, bureau, board, commission, university or similar agency of the State." (Emphasis added.) 745 ILCS 10/1—206 (West 1996).

Our primary goal in interpreting a statutory provision is to ascertain and give effect to the legislature's intent. To discern that intent, we first consider the plain language of the provision itself and consider it in the context of the act as a whole and in connection with every other section of the act. *Barnett v. Zion Park District*, 171 Ill. 2d 378, 388-89 (1996). If the provision is clear and unambiguous, then the plain language of the act must be given effect without resort to other interpretive aids. *Barnett*, 171 Ill. 2d at 389. We must not depart from the plain language of the act by creating exceptions, limitations, or conditions that conflict with the express legislative intent. *Barnett*, 171 Ill. 2d at 389.

The key to determining whether the Symphony Association is entitled to claim the limitations period under the Act is the interpretation of the phrase "any not-for-profit corporation organized to conduct public business." Neither party disputes that the Symphony Association is a not-for-profit corporation. Our inquiry, therefore, must center on what activities the legislature intended to constitute the conduct of public business (745 ILCS 10/1—206 (West 1996)).

Neither our own research nor the parties suggest that "public business" is a term of art or should possess any meaning but its plain, ordinary, and commonly understood meaning. "Public" is defined as "[p]ertaining to a state, nation, or whole community; proceeding from, relating to, or affecting the whole body of people or an entire community. Open to all ***. Belonging to the people at large; *** not limited or restricted to any particular class of the community." Black's Law Dictionary 1227 (6th ed. 1990). "Business" is defined as an "[a]ctivity or enterprise for gain, benefit, advantage or livelihood." Black's Law Dictionary 198 (6th ed. 1990). Thus, to conduct "public business" under the Act, a corporation must pursue an activity that benefits the entire community without limitation. In addition, the phrase "public business" is also today commonly understood to mean the business of the government.

With these ideas in mind, we turn to the question of whether the Symphony Association was engaged in conducting public business. The Symphony Association supports two main functions: the various concert performances of the Lake Forest Symphony Orchestra, and

the provision of private music lessons through the music institute. While providing music lessons is consonant with an educational purpose and while the Symphony Association's articles of incorporation state that musical education is one of the purposes for which it was incorporated, this is not sufficient to bring the Symphony Association within the definition of a local public entity.

■ First, providing private music lessons, subscription concerts, and special events on a pay-for-admission basis does not sufficiently benefit the entire community. While the Symphony Association rightly notes that there is a public interest in these activities, it confuses public interest with public business. We note that the Symphony Association's activities are provided only to subscribers or other paying customers, in effect, members. In *Johnson v. Decatur Park District*, 301 Ill. App. 3d 798, 811 (1998), the court found that the local YWCA was not a local public entity for precisely the reason that it was organized only to benefit its members. The court considered the YWCA's mission statement, funding sources, and the services it provided but determined that, because the YWCA was a membership organization existing for the benefit of its members and not the public at large, it was not a local public entity under the Act. *Johnson*, 301 Ill. App. 3d at 811. Similarly in the case at bar, the Symphony Association benefits its members, the subscribers, and paying customers, not the public at large.

Second, despite some educational benefit to its membership and other customers, the Symphony Association does not provide the government-like services suggested by the phrase "public business." "Government" was organized to provide for the public health, safety, welfare, and education. See generally U.S. Const., preamble; Ill. Const. 1970, preamble. Indeed, those entities that our courts have found to be local public entities under the Act and that were not specifically enumerated in section 1—206 include the Chicago Housing Authority (*Davis v. Chicago Housing Authority*, 176 Ill. App. 3d 976, 980 (1988) (public welfare)), community college districts or boards (*Luciano v. Waubonsee Community College*, 245 Ill. App. 3d 1077, 1084 (1993) (public education; case considered Act before it was amended to explicitly add community colleges as local public entities)), and METRA (*Smith v. Northeast Illinois Regional Commuter R.R. Corp.*, 210 Ill. App. 3d 223, 227 (1991) (public transportation)). In addition, an area mental health center was found to be a local public entity under the Act in *McQueen v. Shelby County*, 730 F. Supp. 1449 (C.D. Ill. 1990). There, the United States District Court held that the Coles County Mental Health Center was a local public entity under the Act. *McQueen*, 730 F. Supp. at 1454. In reaching this conclusion, the court

rejected the argument that a local public entity must possess the power to tax and instead considered the Mental Health Center's corporate purpose as well as the services it provided in light of the plain language of the Act. *McQueen*, 730 F. Supp. at 1453-54.

By contrast, here, the Symphony Association runs a symphony orchestra. While government lately has become a patron of the arts through such vehicles as the National Endowment for the Arts, government has never directly provided them for the public's benefit. And while part of the Symphony Association's activities is directed toward music education, this too does not fall within the government's obligation to provide public education; indeed, music is an *extracurricular* activity. This is not to say that the fine arts are not of public interest, but rather, government has not been traditionally obliged to provide the fine arts to the public as it has been obliged to provide for basic public health, safety, welfare, and education. Because the Symphony Association is a membership organization and operates in an area outside of the traditional areas of governmental concern, we hold that it is not a local public entity for the purposes of the Act.

Defendants argue that *McQueen* mandates a finding that the Symphony Association is a local public entity. Defendants argue that *McQueen* determined that the Mental Health Center was a local public entity mainly by reference to its articles of incorporation. We disagree. While the Mental Health Center in *McQueen* stated that it was incorporated for educational purposes, as does the Symphony Association here, the district court also considered that the Mental Health Center's activities were centered on providing health services to the public at large (in addition to educating others to provide those services). By contrast, the Symphony Association provides its benefits to subscribers and not to the public at large. Moreover, the Symphony Association is involved in the fine arts, an area unrelated to traditional governmental functions, as opposed to public health in *McQueen*. Defendants' reliance on *McQueen*, therefore, is unavailing.

Because the Symphony Association is not entitled to invoke the one-year statute of limitations pursuant to section 8—101 of the Act, plaintiff's suit was not untimely as to the Symphony Association. With respect to Lowe, plaintiff filed her amended complaint on July 2, 1997, within two years of the alleged incident. Her suit against Lowe, therefore, was also timely filed.

Accordingly, we reverse the judgment of the circuit court of Lake County and remand the cause for further proceedings.

Reversed and remanded.

BOWMAN, P.J., and HUTCHINSON, J., concur.