NO. 4-00-0473

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

PAUL D. CARROLL, as Administrator of ) Appeal from

the Estate of JOSHUA A. CARROLL, ) Circuit Court of

Deceased, ) Edgar County

Plaintiff-Appellant, ) No. 99L7

v. )

JERRY PADDOCK, ROD NEESON; HUMAN )

RESOURCES CENTER OF EDGAR and CLARK )

COUNTIES; PARIS COMMUNITY HOSPITAL; and ) Honorable

MAMERTO GUINTO, M.D., ) James R. Glenn,

Defendants-Appellees. ) Judge Presiding.

_________________________________________________________________

JUSTICE GARMAN delivered the opinion of the Court:

Plaintiff, Paul D. Carroll, as the administrator of the estate of Joshua A. Carroll, appeals the order of the circuit court of Edgar County dismissing his complaint against defendants, Human Resources Center of Edgar and Clark Counties (HRC), Jerry Paddock (Paddock), Rod Neeson (Neeson), and Mamerto Guinto, M.D. (Guinto), and granting Paris Community Hospital's (Hospital) motion for summary judgment pursuant to the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/1-101 through 10-101 (West 1998)).  Plaintiff also appeals the circuit court's dismissal of his February 15 and April 24, 2000, motions for a declaration of unconstitutionality of a portion of section 1-206 of the Act (745 ILCS 10/1-206 (West 1998)).  Plaintiff argues on appeal that (1) HRC and the Hospital are not local public entities under section 1-206 of the Act and are therefore not entitled to invoke the one-year statute of limitations under section 8-101 of the Act (745 ILCS 10/8-101 (West 1998)); (2) section 1-206 of the Act, purporting to give governmental tort immunity to "any not-for-profit corporation organized for the purpose of conducting public business" (745 ILCS 10/1-206 (West 1998)), is unconstitutional as constituting special legislation in violation of section 13 of article IV of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IV, §13); and (3) section 1-206 of the Act is unconstitutional in that it cedes or delegates to private entities the sovereign immunity that belongs solely and exclusively to the state.  Because we agree with the plaintiff on the first issue, we do not consider his constitutional challenges.  We reverse and remand.  

I. BACKGROUND

The following facts are taken from plaintiff's well-pleaded complaint, exhibits, and discovery depositions filed in the record.  On April 14, 1997, Paul and Patricia Carroll brought their son, Joshua, to the emergency room of the Hospital after he attempted suicide by slashing his wrists, swallowing a large number of thyroid pills and ibuprofen tablets, and by ingesting a half glass of liquid pesticide.  Joshua saw Paddock and Guinto while in the emergency room.  The Hospital did not admit Joshua but discharged him from the emergency room on that same day.  On April 15, 1997, Paul and Patricia took their son to HRC's facilities in Paris, Illinois, where Joshua received psychological assessment, care, and treatment from Neeson.  Later that morning, Joshua committed suicide at his home by means of a shotgun.

HRC is a not-for-profit corporation.  According to its articles of incorporation, it is organized "[e]xclusively for charitable and educational purposes, the purposes being limited to those set forth in [s]ection 501(c)(3) of the Internal Revenue Code [(26 U.S.C. §501(c)(3) (1994))]."  The articles also provide that "[n]o part of [HRC's] net income will inure to the benefit of private individuals," and "the organization will not be operated for the benefit of private individuals or designated individuals, the creators or their families, or persons controlled directly or indirectly by such private interest."  Further, HRC's mission statement explains that the corporation shall "promote and conserve the mental health of the people of Edgar and Clark [C]ounties." 

HRC is composed of three divisions: developmental disabilities, community services, and clinical services.  First, HRC provides services to developmentally disabled persons, in part, through vocational rehabilitation programs, including work opportunities at Café France, an on-site restaurant at HRC; private contracts for laundry services; and a contract with the Illinois Department of Transportation for cleanup service at an I-70 rest area.  HRC also provides substance abuse activities on an out­patient basis.  HRC has a prevention program, driving under the influence (DUI) assessment evaluation, and classes.  Finally, the clinical services division provides outpatient mental health services.  This division provided mental health screening and assessment to Joshua on April 15, 1997.  According to John Young, executive director of HRC, HRC provided Joshua's care and treatment pursuant to a contract with the Coles County Mental Health Center (Health Center).  HRC contracted to provide screening, assessment, and support services (SASS) under the terms prescribed by the Illinois Department of Mental Health and Developmental Disabilities (Department) and the Department of Children and Family Services (DCFS).  The Health Center pays HRC $17,075 annually for its SASS services.

According to the charitable organization supplement for fiscal year 1998, HRC received 66.13% of its funding from "government grants" and "membership dues" equaling $1,826,777 out of a total revenue of $2,762,456.  In addition, HRC received local funding through property tax assessment; $5,067 from the Edgar County "708 board" and $8,540 from the Clark County "708 board."  (A "708 board" is a seven-member community mental health board that administers the Community Mental Health Act (405 ILCS 20/0.1 through 13 (West 1998)).)  In fiscal year 1997, HRC's financial statement reports revenue of $1,521,505.88 from "fees and grants from governmental agencies" out of a total revenue of $2,781,342.54.  Of this amount, the Department contributed $541,929.01 through grants to HRC that placed certain requirements and restrictions on HRC.  The Department and HRC also contracted for services totaling $556,568.51.  Together, support from the Department amounted to 41.49% of HRC's total revenues in fiscal year 1997.

The Hospital also is a not-for-profit organization.  Its purpose, as stated in the articles of incorporation, is: 

"To conduct and carry on the work of the corporation not for profit but exclusively for scientific, education[al,] and charitable purposes in such a manner that no part of its income or property shall inure to the private benefit of any donor, member, officer[,] or individual having a personal or private interest in the activities of the [c]orporation.

* * *

To operate a charitable hospital in Edgar County, Illinois[,] for the care of the sick of the area without regard to their ability to pay for such services and without regard to their race, color, or creed."

In 1997, the sources of revenue for the Hospital included Medicare and Medicaid payments, insurance payments, and self-pay collections.  The Hospital received $4,318,524 from Medicare and $545,271 from Medicaid, representing 50.9% of its total revenue for the year.  The Hospital received $4,936,253 from insurance payments and self-pay collections.  The only local government funding provided to the corporation was pursuant to a contract between the Hospital and the Edgar County Special Service Area for ambulance service.  For this service, Edgar County paid the Hospital $80,000 in 1997. 

The Edgar County Board does not control the Hospital's board of directors.  The latter consists predominantly of business­people of the community and does not include members of the county board. 

Plaintiff filed his complaint on April 15, 1999, under the Wrongful Death Act (740 ILCS 180/0.01 through 2.2 (West 1998)) and requested funeral and burial expenses in connection with Joshua's suicide of April 15, 1997.  On August 20, 1999, plaintiff requested the court to convert Guinto, a respondent in discovery, to a defendant.  The trial court granted plaintiff's motion on September 23, 1999.  Paddock, Neeson, HRC, and Guinto filed motions to dismiss pursuant to section 2-619(a)(5) of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(5) (West 1998)).  The Hospital filed a motion for summary judgment pursuant to section 2-1005(b) of the Code (735 ILCS 5/2-1005(b) (West 1998)).  The motions all asserted that plaintiff's complaint was not timely filed under the one-year statute of limitations afforded local public entities under the Act.  After hearings on February 16 and April 27, 2000, the trial court granted defendants' motions, finding that HRC and the Hospital are local public entities within the meaning of the Act and that Paddock, Neeson, and Guinto are employees and agents of the local public entities.  The court concluded that the complaint was filed outside the one-year limitations period.  Additionally, the court rejected plaintiff's constitutional challenges to section 1-206 of the Act.  Plaintiff appeals.

II. ANALYSIS

Plaintiff argues that HRC and the Hospital are not local public entities as defined by section 1-206 of the Act; therefore, both entities and their employees are not entitled to use the one-year statute of limitations under section 8-101 of the Act (745 ILCS 10/8-101 (West 1998)).  We review the court's granting HRC's, Neeson's, Paddock's, and Guinto's section 2-619(a)(5) motions to dismiss 
de
 
novo
.  
Johnson v. Du Page Airport Authority
, 268 Ill. App. 3d 409, 414, 644 N.E.2d 802, 805 (1994).  We also use 
de
 
novo
 review in examining the trial court's granting of the Hospital's motion for summary judgment.  
Wright v. St. John's Hospital of the Hospital Sisters of the Third Order of St. Francis
, 229 Ill. App. 3d 680, 683, 593 N.E.2d 1070, 1072 (1992).
  

The purpose of the Act is "to protect local public entities and public employees from liability arising from the operation of government."  745 ILCS 10/1-101.1 (West 1998).  The Act defines the term "local public entity" as:

"a county, township, municipality, municipal corporation, school district, school board, educational service region, regional board of school trustees, community college district, community college board, forest preserve district, park district, fire protection district, sanitary district, museum district, emergency telephone system board, and all other local governmental bodies.  'Local public entity' also includes library systems and any intergovernmental agency or similar entity formed pursuant to the Constitution of the State of Illinois or the Intergovernmental Cooperation Act as well as any 
not-for-profit
 
corporation
 
organized
 
for
 
the
 
purpose
 
of
 
conducting
 
public
 
business
.  It does not include the State or any office, officer, department, division, bureau, board, commission, university[,] or similar agency of the State."  (Emphasis added.) 745 ILCS 10/1-206 (West 1998).

In interpreting section 1-206 of the Act, our primary goal is to determine and give effect to the intent of the legislature.  This legislative intent is ascertained primarily from the language of the Act.  
Barnett v. Zion Park District
, 171 Ill. 2d 378, 388, 665 N.E.2d 808, 813 (1996).  The Act must be evaluated as a whole; we construe each provision in connection with every other section.  
Barnett
, 171 Ill. 2d at 388-89, 665 N.E.2d at 813.  Because the Act is in derogation of the common law, its terms must be strictly construed.  
Independent Trust Corp. v. City of Chicago Department of Water
, 295 Ill. App. 3d 811, 815, 693 N.E.2d 459, 462 (1998). 

We note initially that our research reveals no Illinois case that has specifically defined the phrase "organized for the purpose of conducting public business."  However, Illinois courts, including this court, have analyzed and interpreted this language.  We review those cases.

The United States District Court for the Central District of Illinois examined whether an entity was "organized for the purpose of conducting public business" under the Act in 
McQueen v. Shelby County
, 730 F. Supp. 1449 (C.D. Ill. 1990).  In 
McQueen
, the Coles County Mental Health Center (Health Center) counseled, evaluated, and screened plaintiff's decedent, an inmate at the Shelby County jail.  The Health Center determined that plaintiff had no indication of suicidal intent and recommended transfer back to the county jail.  Upon return to the jail, plaintiff's decedent committed suicide.  
McQueen
, 730 F. Supp. at 1451.  The Health Center claimed that it was a "local public entity" immune from liability under the Act.  
McQueen
, 730 F. Supp. at 1452.  The Health Center, a not-for-profit corporation, "engage[s] exclusively in scientific, literary[,] and educational activities leading to the promotion and conservation of the mental health of the people of the Coles County, Illinois, area."  
McQueen
, 730 F. Supp. at 1453.  The Health Center received over 90% of its financing from state and local sources.  
McQueen
, 730 F. Supp. at 1453.  The district court rejected the argument that the Illinois General Assembly intended a local public entity to have the power to levy taxes and held that the Health Center fell within the plain meaning of the definition of "local public entity" and was entitled to immunity.  
McQueen
, 730 F. Supp. at 1454.

The First District, in 
Smith v. Northeast Illinois Regional Commuter R.R. Corp.
, 210 Ill. App. 3d 223, 228, 569 N.E.2d 41, 43 (1991), decided that METRA, a commuter rail line, was a "local public entity" under the Act and was, therefore, not liable for punitive or exemplary damages.  The court noted that METRA is a not-for-profit corporation with no shareholders, funded with public funds, and operates its commuter rail line in the public interest.  
Smith
, 210 Ill. App. at 227, 569 N.E.2d at 43.  The court held that the amendment to section 1-206 of the Act (which added the language to be interpreted in this case), "includes[,] within the definition[,] local public entity not-for-profit corporations like METRA organized for the purpose of conducting public business."  
Smith
, 210 Ill. App. 3d at 228, 569 N.E.2d at 43.

In 
Johnson v. Decatur Park District
, 301 Ill. App. 3d 798, 810-11, 704 N.E.2d 416, 424-25 (1998), this court determined that the Young Women's Christian Association (YWCA) was not a "local public entity" under the Act entitled to immunities.  The mission of the YWCA, a not-for-profit corporation receiving some public funding, is to create opportunities for women's growth, leadership, and power.  
Johnson
, 301 Ill. App. 3d at 810, 704 N.E.2d at 424-25.  This court concluded that, regardless of its mission statement or sources of funding, the YWCA is a membership organization.  As a membership organization, the YWCA exists to benefit its members, not the public at large, and, accordingly, it is not a public entity entitled to immunity under the Act.  
Johnson
, 301 Ill. App. 3d at 811, 704 N.E.2d at 425.

Similarly, in 
O'Melia v. Lake Forest Symphony Ass'n
, 303 Ill. App. 3d 825, 830, 708 N.E.2d 1263, 1266 (1999), the Second District held that the Symphony Association was not a "local public entity" because it is a membership organization and is involved in the fine arts, an area unrelated to traditional government functions.  The court distinguished 
McQueen
 in that the mental health center at issue in that case provided health services to the public at large, a function traditionally involving the government.  
O'Melia
, 303 Ill. App. 3d at 830, 708 N.E.2d at 1266.

The court also noted that the term "public business" as contained in the Act should possess its "plain, ordinary, and commonly understood meaning."  
O'Melia
, 303 Ill. App. 3d at 828, 708 N.E.2d at 1265.  The court explained:

"'Public' is defined as '[p]ertaining to a state, nation, or whole community; proceeding from, relating to, or affecting the whole body of people or an entire community.  Open to all ***.  Belonging to the people at large; *** not limited or restricted to any particular class of the community.'  Black's Law Dictionary 1227 (6th ed. 1990). *** Thus, to conduct 'public business' under the Act, a corporation must pursue an activity that benefits the entire community without limitation.  In addition, the phrase 'public business' is also today commonly understood to mean the business of the government."  
O'Melia
, 303 Ill. App. 3d at 828, 708 N.E.2d at 1265.

Next, in 
Hills v. Bridgeview Little League Ass'n
, 306 Ill. App. 3d 13, 24, 713 N.E.2d 616, 625 (1999), 
rev'd on other grounds
, Nos. 87895, 87910 cons. (November 16, 2000), the First District held that the Little League Association (Association) did not conduct public business under the Act.  The court noted that the Association did not present any evidence that it was funded by state or local sources, run by state or village government, or was part of a governmental unit.  
Hills
, 306 Ill. App. 3d at 23-24, 713 N.E.2d at 625.  Further, the court concluded that the Association did not benefit the entire community without limitation or participate in the business of government.  
Hills
, 306 Ill. App. 3d at 24, 713 N.E.2d at 625, citing 
O'Melia
, 303 Ill. App. 3d at 828, 708 N.E.2d at 1265.

Finally, the most recent case to address the issue is 
Niehaus v. Rural Peoria County Council on Aging, Inc.
, 314 Ill. App. 3d 665, 732 N.E.2d 132 (2000).  In 
Niehaus
, the entity in question was the Rural Peoria County Council on Aging (Council).  The Council is a not-for-profit, charitable organization, incorporated to "help senior citizens to live independently and with dignity in their own homes."  
Niehaus
, 314 Ill. App. 3d at 666,  732 N.E.2d at 133.  The corporation receives 65% of its cash funds from government sources, including local government funding.  The  Council also receives funding from membership dues, in-kind contributions, and fund-raising activities.  
Niehaus
, 314 Ill. App. 3d at 667, 732 N.E.2d at 134.

The Third District concluded that the Council was not entitled to the protections of the Act, noting that it is not "almost entirely government funded" but receives some funding from government sources, as do many charitable organizations.  
Niehaus
, 314 Ill. App. 3d at 670, 732 N.E.2d at 136.  In addition, the Council is a membership organization providing services to a narrow range of the population.  
Niehaus
, 314 Ill. App. 3d at 670, 732 N.E.2d at 136.  The court also cited an Illinois Supreme Court tax exemption case that specifically defined certain requirements for an organization to be defined as charitable, including that (1) the organization benefit
 the public at large, (2) reduce the burdens of government, and (3) derive its funds from public and private charity.  
Niehaus
, 314 Ill. App. 3d at 670, 732 N.E.2d at 137, quoting 
Board of Certified Safety Professionals of the Americas, Inc. v. Johnson
, 112 Ill. 2d 542, 546, 494 N.E.2d 485, 488 (1986).  The 
Niehaus
 court held that the characteristics that make a not-for-profit corporation a charitable organization do not, without more, also qualify the corporation as a local public entity under the Act.  
Niehaus
, 314 Ill. App. 3d at 670, 732 N.E.2d at 137.

We agree with the Third District's reasoning and conclude that a not-for-profit corporation must meet additional requirements to be included in the definition of "local public entity" under the Act.  Clearly, the Act's purpose of "protect[ing] local public entities and public employees from liability arising from 
the
 
operation
 
of
 
government
" requires more.  (Emphasis added.)  745 ILCS 10/1-101.1 (West 1998).

HRC argues that it receives substantial government funding--66.13% from government grants and membership dues in fiscal year 1998 and 55% from fees and grants from governmental agencies in fiscal year 1997.  HRC points out that it is subject to governmental regulations and requirements as a consequence of accepting grant money.  Further, HRC argues that the services it provides are available to the entire community of Edgar and Clark Counties.

We conclude that HRC is not "organized for the purpose of conducting public business" and is not a "local public entity" under the Act.  HRC is not almost entirely government funded; the fact that it receives some grants from government sources does not bring it within the scope of the Act.  As stated in 
Niehaus
, 314 Ill. App. 3d at 670, 732 N.E.2d at 136-37, many charitable organizations receive government funding.  In addition, HRC has failed to prove to this court that it participates in the business of government.  

Defendant Hospital first argues that there can be "no serious contention" that its activities do not fall within the ambit of "conducting public business" because the Act itself sets out detailed provisions regarding "hospital activities."  According to the Hospital, these detailed provisions clearly place its activities within the definition of public business.  See 745 ILCS 10/6-101 through 6-110 (West 1998).  The Hospital, however, has misread the Act.  To receive immunity from injuries resulting from "hospital activities," it must first be determined that the entity is a "local public entity" within the meaning of the Act.  Simply because an entity engages in "hospital activities" does not necessarily mean that the entity conducts public business under section 1-206 of the Act.

   The Hospital obtained 49.1% of its revenue from private sources, namely, insurance payments and self-pay collections.  It receives the remainder of its revenue from federal programs--Medicaid and Medicare.  The only local government funding is provided by Edgar County through a contract for ambulance services.  The Hospital argues that it receives a substantial portion of its revenues from tax dollars and public sources.  Additionally, it is subject to uniform government regulation.  The Hospital, however, does not provide any evidence that it is subject to any more regulation or government control than any other private hospital.  Moreover, the Hospital's board of directors is not run by the Edgar County Board, nor is any member of the county board a member of the Hospital's board.  We conclude that the Hospital is not government funded, nor is it almost entirely government funded.  Further, the Hospital has not shown that it participates in the business of government.  

We hold that HRC and the Hospital are not local public entities under the Act and, therefore, neither the entities nor their employees are entitled to invoke the one-year statute of limitations pursuant to section 8-101 of the Act.  Plaintiff's suit was timely filed.  Because we find that the Act does not apply to defendants, we need not specifically address the constitutional issues raised by the plaintiff.

Last, we note that HRC filed a motion on appeal to strike a portion of plaintiff's reply brief regarding his constitutional challenge to the Act.  We took that motion with the case and conclude that our resolution of the case based on the Act's inapplicability to defendants renders moot HRC's motion to strike.

III. CONCLUSION

Accordingly, we reverse the judgment of the circuit court of Edgar County and remand the cause for further proceedings.

Reversed and remanded.

STEIGMANN, P.J., and COOK, J., concur.