DAWN T., as Mother and Next Friend of D.D., Plaintiff-Appellant, v. HUDELSON BAPTIST CHILDREN'S HOME, Defendant-Appellee.

Fifth District    No. 5—01—0057

Opinion filed August 20, 2002.

William R. Tapella II, of Hefner, Eberspacher & Tapella, of Mattoon, for appellant.

James T. Ferrini and Ann C. Chalstrom, both of Clausen Miller P.C., of Chicago, for appellee.

JUSTICE MELISSA CHAPMAN delivered the opinion of the court:

This is an appeal from the circuit court's grant of a motion to dismiss filed by Hudelson Baptist Children's Home (Hudelson) pursuant to section 2—619 of the Code of Civil Procedure (Code) (735 ILCS 5/2—619 (West 2000)). Dawn T. (plaintiff), as mother and next friend of D.D., brought this action for negligence and willful and wanton misconduct. She alleged that Hudelson caused her son to be the victim of sexual abuse while in its care and custody. The circuit court held that Hudelson was immune from suit pursuant to the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/1—101 et seq. (West 2000)). The primary issue for review is whether Hudelson, a not-for-profit charitable institution providing residential treatment to disturbed children, is a "local public entity" within the meaning of section 1—206 of the Act (745 ILCS 10/1—206 (West 2000)). We reverse and remand.

## I. BACKGROUND

On April 27, 1997, D.D., a minor, entered Hudelson's residential treatment program. On September 10, 1997, one of Hudelson's employees filed a report indicating that D.D. had been the victim of repeated sexual abuse while in Hudelson's care. The report indicated that two other male children (minors A and B), also in Hudelson's care, had perpetrated the abuse.

Hudelson is a residential treatment facility providing counseling and education to children exhibiting emotional and behavioral disorders. The children receiving treatment at Hudelson are all referrals from the Department of Children and Family Services (DCFS), and each child either is a ward of DCFS or is in the custody of DCFS. The referrals are made pursuant to a fees-for-services contract with DCFS, which sets out a per diem rate per child and additional rates for a schedule of services.

Hudelson was founded in 1903 as a private facility for orphaned and needy children and has operated in affiliation with the Baptist Church since 1911. It is a not-for-profit corporation, as well as a charitable organization and a tax-exempt entity under section 501(c)(3) of the Internal Revenue Code (26 U.S.C. § 501(c)(3) (1994)). Hudelson's 1973 amended articles of incorporation state that it is "organized exclusively for charitable, religious, educational[,] and scientific purposes." Further, Hudelson's mission statement explains that its purpose is to "promote, in Christian love, the physical, social, emotional, intellectual[,] and spiritual development of children and their families in need through a variety of exemplary family-focused child welfare services." Hudelson's contract states that the program is designed to serve "females between the ages of 10 and 18 years who have at some point in their history been victims of sexual abuse and for whom the abuse experience has not been successfully resolved and males between the ages of 6 and 12 years who display behavioral or emotional problems which prevent them from residing in a less restrictive setting[,] therefore requiring residential treatment." Hudelson receives its revenue through a contract with DCFS, along with supplemental charitable contributions from the Baptist Church. The management and control of Hudelson is through a Baptist Church board of directors.

On July 18, 2000, plaintiff filed a two-count amended complaint alleging that Hudelson's conduct was negligent and willful and wanton. The complaint alleged that prior to the placement of minors A and B with Hudelson, DCFS had identified these minors as sexually aggressive children and at a high risk to offend sexually. Further, plaintiff alleged that Hudelson knew that an evaluation of minors A and B had recommended that they be placed in a well-supervised environment. Plaintiff further claimed that, despite Hudelson's knowledge of the propensities of minors A and B, Hudelson failed to protect D.D. from these sexually aggressive children. Plaintiff claimed that because of Hudelson's negligence, D.D. was sexually attacked, sodomized, and forced to engage in oral sex with minors A and B on a repeated basis from July 7, 1997, through September 10, 1997.

Relying on the Act, Hudelson asserted the affirmative defense of immunity. On August 23, 2000, Hudelson filed a motion to dismiss pursuant to section 2—619 of the Code. In its motion to dismiss, Hudelson claimed that it has immunity under the Act because it is a "local public entity" "organized for the purpose of conducting public business" under section 1—206. Hudelson further argued that section 4—102 of the Act (745 ILCS 10/4—102 (West 2000)) prevents it from being found negligent for failing to protect D.D. and that section

4—102 of the Act and section 34—84(a) of the School Code (105 ILCS 5/34—84(a) (West 2000)) forbid plaintiff's action for willful and wanton misconduct. Lastly, Hudelson argued that it was also shielded from liability under section 2—201 of the Act (745 ILCS 10/2—201 (West 2000)) because the placement of D.D. with minors A and B was an exercise of policy and discretion under the Act.

The trial court granted Hudelson's motion, finding that it was a "local public entity" within the meaning of the Act. Plaintiff appealed.

## II. ANALYSIS

Plaintiff argues that the trial court erred when it found that Hudelson was a public entity under the Act and dismissed her complaint. She contends that Hudelson is not organized for the purpose of conducting public business but that, rather, it is a not-for-profit corporation organized for charitable purposes. Plaintiff further maintains that Hudelson is not funded by or controlled by local government and does not offer its services to the general public. Alternatively, plaintiff argues that if this court agrees with the circuit court's finding—that Hudelson is a local public entity—then section 6—106 of the Act (745 ILCS 10/6—106 (West 2000)) should apply to Hudelson's conduct and not sections 2—201 and 4—102 of the Act or section 34—84(a) of the School Code, as Hudelson contends.

Hudelson maintains that it was organized for the purpose of conducting public business as shown by its corporate history. In further support of its position, Hudelson argues that it engages in the "business of government," offers its services to the public at large, receives nearly all of its funding from government sources, and is heavily regulated by the State.

We review *de novo* the court's granting of a section 2—619 motion to dismiss. *Johnson v. Du Page Airport Authority*, 268 Ill. App. 3d 409, 414, 644 N.E.2d 802, 805 (1994).

The main objective of statutory construction is to ascertain and give effect to the intent of the legislature. In order to accomplish that objective, we consider the statutory language as a whole and each provision in relation with every other section. *Barnett v. Zion Park District*, 171 Ill. 2d 378, 388-89, 665 N.E.2d 808, 813 (1996). Because the Act is in derogation of the common law action against public entities, we must strictly construe its language against the public entity involved. *Aikens v. Morris*, 145 Ill. 2d 273, 277-78, 583 N.E.2d 487, 490 (1991)

The stated purpose of the Act is "to protect local public entities and public employees from liability arising from the operation of government." 745 ILCS 10/1—101.1 (West 2000). The primary issue

on appeal is whether Hudelson is a "local public entity" as defined by the Act. In deciding, we must interpret section 1—206:

" 'Local public entity' includes a county, township, municipality, municipal corporation, school district, school board, educational service region, regional board of school trustees, community college district, community college board, forest preserve district, park district, fire protection district, sanitary district, museum district, emergency telephone system board, and all other local governmental bodies. 'Local public entity' also includes library systems and any intergovernmental agency or similar entity formed pursuant to the Constitution of the State of Illinois or the Intergovernmental Cooperation Act[,] as well as *any not-for-profit corporation organized for the purpose of conducting public business.* It does not include the State or any office, officer, department, division, bureau, board, commission, university[,] or similar agency of the State." (Emphasis added.) 745 ILCS 10/1—206 (West 2000).

The term "any not-for-profit corporation organized for the purpose of conducting public business" has been the subject of analysis in a number of Illinois appellate cases. The courts have considered different factors in a variety of fact scenarios and have arrived at varying interpretations of the term's meaning.

Several courts have focused on the degree of public funding the entity receives (*Smith v. Northeast Illinois Regional Commuter R.R. Corp.*, 210 Ill. App. 3d 223, 569 N.E.2d 41 (1991); *McQueen v. Shelby County*, 730 F. Supp. 1449 (C.D. Ill. 1990); *Carroll v. Paddock*, 317 Ill. App. 3d 985, 741 N.E.2d 326 (2000), *aff'd*, 199 Ill. 2d 16, 764 N.E.2d 1118 (2002)), while other courts have given greater consideration to the extent the entity benefits the public without limitation (*Hills v. Bridgeview Little League Ass'n*, 306 Ill. App. 3d 13, 713 N.E.2d 616 (1999), *rev'd on other grounds*, 195 Ill. 2d 210, 745 N.E.2d 1166 (2000); *Niehaus v. Rural Peoria County Council on Aging, Inc.*, 314 Ill. App. 3d 665, 732 N.E.2d 132 (2000); *Johnson v. Decatur Park District*, 301 Ill. App. 3d 798, 704 N.E.2d 416 (1998); *O'Melia v. Lake Forest Symphony Ass'n*, 303 Ill. App. 3d 825, 708 N.E.2d 1263 (1999)). Still another factor considered by the courts has been whether the entity engages in government-like services. *O'Melia*, 303 Ill. App. 3d 825, 708 N.E.2d 1263; *Niehaus*, 314 Ill. App. 3d 665, 732 N.E.2d 132; *Carroll*, 317 Ill. App. 3d 985, 741 N.E.2d 326; *Smith*, 210 Ill. App. 3d 223, 569 N.E.2d 41; *Hills*, 306 Ill. App. 3d 13, 713 N.E.2d 616.

■ Fortunately, our Illinois Supreme Court has given us guidance in navigating this confusing and conflicting body of case law, in the recently decided case of *Carroll v. Paddock*, 199 Ill. 2d 16, 764 N.E.2d 1118 (2002). The plaintiff in *Carroll* brought a wrongful-death action

against two not-for-profit charitable organizations—Human Resources Center, a mental health care organization, and Paris Community Hospital. The plaintiff alleged that their negligence caused his son's death by suicide. Both defendants claimed immunity under the Act. In granting the defendants' motion to dismiss and for summary judgment, the trial court found that they were both local public entities within the meaning of the Act. In determining whether the hospital and the mental health center were organized for the purpose of conducting public business, the appellate court considered both the degree of government funding and the showing of participation in the business of government. *Carroll*, 317 Ill. App. 3d 985, 741 N.E.2d 326. The appellate court concluded that neither defendant was a local public entity under the Act, and the court reversed. *Carroll*, 317 Ill. App. 3d at 995, 741 N.E.2d at 333. The Illinois Supreme Court affirmed (after the case *sub judice* was briefed and argued). The court, however, found that the appellate court placed too much emphasis in its analysis on the amount of government funding: "Irrespective of the degree of government funding, a not-for-profit corporation must be 'organized for the purpose of conducting public business' in order to satisfy the definition of a '[l]ocal public entity.' " *Carroll*, 199 Ill. 2d at 25, 764 N.E.2d at 1124, quoting 745 ILCS 10/1—206 (West 2000). The court went on to adopt as its own a working definition of the term "public business," from the *O'Melia* opinion, wherein the court stressed that the term "public business" should have its "plain, ordinary, and commonly understood meaning" (*O'Melia*, 303 Ill. App. 3d at 828, 708 N.E.2d at 1265):

> " ' " 'Public' is defined as '[p]ertaining to a state, nation, or whole community; proceeding from, relating to, or affecting the whole body of people or an entire community. Open to all ***. Belonging to the people at large; *** not limited or restricted to any particular class of the community.' Black's Law Dictionary 1227 (6th ed. 1990). *** Thus, to conduct 'public business' under the Act, a corporation must pursue an activity that benefits the entire community without limitation. In addition, the phrase 'public business' is also today commonly understood to mean the business of the government." ' " *Carroll*, 199 Ill. 2d at 25-26, 764 N.E.2d at 1124, quoting *Carroll*, 317 Ill. App. 3d at 992, 741 N.E.2d at 331, quoting *O'Melia*, 303 Ill. App. 3d at 828, 708 N.E.2d at 1265.

■ With this definition in mind, we now turn to the question of whether Hudelson was engaged in conducting "public business." Hudelson was privately created and is privately controlled and managed by a Baptist Church board of directors. There is no evidence that the members of the board are anything other than private citizens. The

state regulations that Hudelson claims subject it to governmental control are uniform state standards that Hudelson (or any other for-profit or not-for-profit organization) must follow if it wishes to be a service provider to the state. This is not the type of governmental control required by the supreme court in *Carroll*: "Without evidence of local governmental control, it cannot be said that a not-for-profit corporation conducts 'public business' for purposes of the Act." *Carroll*, 199 Ill. 2d at 26, 764 N.E.2d at 1125-26. Hudelson also argues that it qualifies as a "local public entity" because, it claims, it receives almost all of its funding from the state. As discussed earlier, the supreme court in *Carroll* instructs us that government funding is irrelevant without other indicia that the entity conducts public business. *Carroll*, 199 Ill. 2d at 25, 764 N.E.2d at 1124.

Further, we are not convinced that Hudelson receives any funding from the state in the commonly accepted meaning of the word "funding." There was no evidence that Hudelson received any state or local government grants. The "funding" Hudelson receives from the state is nothing more than payment for services rendered. If Hudelson does not provide the contractual services, it receives no money. Again, this relationship with the state is no different from a for-profit one. Hudelson also points to its mission statement and articles of incorporation as proof that its purpose is of public benefit. While there can be no question that Hudelson's purpose, like that of many other charitable organizations, is for the public good, that purpose alone does not transform it into a public business. *Carroll*, 199 Ill. 2d at 26, 764 N.E.2d at 1124, citing *Carroll*, 317 Ill. App. 3d at 994-95, 741 N.E.2d at 333. Additionally, we do not believe that Hudelson's business purpose meets the requirement that it "benefits the entire community without limitation," since by its own program description it is designed for a very restricted segment of the public. *Carroll*, 199 Ill. 2d at 25-26, 764 N.E.2d at 1124.

In a strongly worded conclusion, the supreme court in *Carroll* stated:

"Public business is the business of government[,] and a local public entity must either be owned by or operated and controlled by a local governmental unit. Immunity under the Act only attaches to liability arising from the operation of government. [Citation.] Therefore, a not-for-profit is involved in the operation of the government's public business if and only if the not-for-profit is tightly enmeshed with government either through direct governmental ownership or operational control by a unit of local government." *Carroll*, 199 Ill. 2d at 27, 764 N.E.2d at 1125.

It is clear to us under the facts of this case that Hudelson is not

"enmeshed with government." Applying the holding in *Carroll* to the facts of this case leads us to conclude that Hudelson is not a local public entity and therefore not entitled to the protection provided under the Act.

Because we find that the Act does not apply to Hudelson, we need not address plaintiff's alternative arguments regarding immunity.

## III. CONCLUSION

We reverse the judgment of the circuit court of Marion County and remand the cause for further proceedings.

Reversed; cause remanded.

MAAG, P.J., and RARICK, J., concur.