O’Donnell, J.
{¶ 1} Adam White, a member of the Olentangy Local School District Board of Education, appeals from a judgment of the Fifth District Court of Appeals affirming an order granting judgment on the pleadings in favor of the board in an action involving Ohio’s Open Meetings Act, R.C. 121.22. The issue presented on this appeal is whether a series of e-mails between and among a majority of the members of a public body relating to a response to a newspaper editorial, which culminated in the publication of a response that the board later ratified at a public meeting, qualifies as a “meeting” for purposes of R.C. 121.22.
Facts and Procedural History
{¶ 2} At the time pertinent to this matter, the school board consisted of White, Julie Feasel, Kevin O’Brien, Stacy Dunbar, and president David King. The amended complaint alleges that White independently conducted an investigation into alleged improper expenditures by two athletic directors employed by the Olentangy Local School District that resulted in one resigning and both being required to reimburse the district. Thereafter, on September 25, 2012, King, Feasel, O’Brien, and Dunbar amended a board policy to require that all communications between board members and staff first pass through the district superintendent or the district treasurer. White voted against the policy change, and on October 11, 2012, the Columbus Dispatch published an editorial entitled “Role Reversal” in which it praised White for his vote and implicitly criticized the other board members for adopting a restrictive policy designed to thwart White from conducting further investigations into' suspected illegal spending by district employees.
*76 {¶ 3} King then sought to have Feasel, O’Brien, and Dunbar publicly respond to the editorial and directed that they and Superintendent Wade Lucas and district staff members Teresa Niehaus, Linda Martin, and Karen Truett collaborate and issue a response to the editorial on behalf of the board. The board members and district employees did so in a series of e-mail exchanges. O’Brien submitted a proposed response signed by all board members except for White to the Dispatch. King then submitted a final response to the Dispatch that he signed in his capacity as board president indicating that Feasel, O’Brien, and Dunbar consented to its publication. The Dispatch published that response on October 27, 2012.
{¶ 4} Approximately six months later, White filed this lawsuit against King, Feasel, O’Brien, and Dunbar, alleging that they had violated the Open Meetings Act. That same day, at a regular board meeting, White advised the board of the lawsuit and moved that “no public monies be spent defending the 4 board members, or in the alternative, if any public monies are spent defending the 4 board members, those members agree to reimburse the district for any monies spent.” The motion died for lack of a second. King, Feasel, O’Brien, and Dunbar then voted to publicly ratify the response and deny that the board “violated the Sunshine Law.” White abstained from these votes.
{¶ 5} The board members answered the complaint and moved for judgment on the pleadings. White then moved for leave to amend his complaint and add the board itself as a defendant. The trial court granted White’s motion, ordered the clerk to file the amended complaint instanter, and denied the motion for judgment on the pleadings as moot. In the amended complaint, White sought a declaratory judgment that the board and other board members violated the Open Meetings Act, statutory damages, a temporary restraining order, and injunctive relief. The respondents answered and jointly moved for judgment on the pleadings pursuant to Civ.R. 12(C).
{¶ 6} The trial court determined that King, Feasel, O’Brien, and Dunbar had immunity and were entitled to judgment on the pleadings in their individual capacities. The court also granted the board’s motion for judgment on the pleadings for three reasons: no prearranged discussion of public business had occurred because the communications among the board members originated with an unsolicited e-mail from King, R.C. 121.22 does not apply to e-mails, and at the time of the e-mail exchange, there was no pending rule or resolution before the board.
{¶ 7} On appeal, White challenged the court’s ruling only with respect to the board. In affirming, the appellate court held that the definition of “meeting” in R.C. 121.22 does not include sporadic e-mails and that the e-mails did not discuss public business, because at the time they were exchanged, there was no pending *77 rule or resolution before the board. And, despite the fact that the board later ratified the response to the editorial, ratification did not retroactively create a prearranged discussion of public business via e-mails. Finally, the appellate court stated that “mere discussion of an issue of public concern does not mean there were deliberations under the statute.” 2014-Ohio-3896, 2014 WL 4415396, ¶ 26.
{¶ 8} White has presented two propositions of law, which we accepted:
Under the Ohio Open Meetings Statute, Ohio Rev.Code § 121.22, liberally construed, private deliberations concerning official business are prohibited, whether such deliberations are conducted in person at an actual face-to-face meeting or by way of a virtual meeting using any other form of electronic communication such as telephone, e-mail, voicemail, or text messages.
Under the Ohio Open Meetings Statute, Ohio Rev.Code § 121.22, when a board of education formally votes to ratify a prior action, the ratified action constitutes “official business” under the Statute.
Positions of the Parties
{¶ 9} White maintains that he has established an Open Meetings Act violation in that King prearranged a private discussion regarding a response to a Columbus Dispatch editorial, a majority of the board members and district staff participated in that discussion in their official capacities, and that discussion resulted in a policy statement that the board later ratified. He also argues that sanctioning public bodies’ avoidance of R.C. 121.22 by discussing public business electronically subverts the purpose of the law and that incremental electronic communications violate the law, relying on State ex rel. Cincinnati Post v. Cincinnati, 76 Ohio St.3d 540, 668 N.E.2d 903 (1996).
{¶ 10} The board responds that the amended complaint fails to establish that a meeting occurred for purposes of the Open Meetings Act, asserting that the law does not apply to e-mails because it does not mention electronic communications, even though the General Assembly has amended it several times since 2005, when a court of appeals held that it did not apply to e-mail. In addition, the board argues that discussions about a response to a newspaper editorial do not involve public business. Only private deliberations on a pending rule or resolution can violate R.C. 121.22, and in this case, the policy vote occurred before the publication of the editorial, and the board’s decision to later ratify its response to the editorial to defend against a lawsuit did not retroactively convert the prior emails into a discussion of public business.
*78 Issue
{¶ 11} The issue here is whether an e-mail discussion by a majority of the members of a public body for the purpose of drafting a response to an editorial that is subsequently ratified at a public meeting qualifies as a meeting for purposes of R.C. 121.22.
Law and Analysis

Standard of Review

{¶ 12} In State ex rel. Midwest Pride IV, Inc. v. Pontious, 75 Ohio St.3d 565, 570, 664 N.E.2d 931 (1996), we explained:
Under Civ.R. 12(C), dismissal is appropriate where a court (1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond doubt, that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief. Thus, Civ.R. 12(C) requires a determination that no material factual issues exist and that the movant is entitled to judgment as a matter of law.
(Citation omitted.)
{¶ 13} “Because the review of a decision to dismiss a complaint pursuant to Civ.R. 12(C) presents only questions of law, our review is de novo.” (Citation omitted.) Rayess v. Educational Comm. for Foreign Med. Graduates, 134 Ohio St.3d 509, 2012-Ohio-5676, 983 N.E.2d 1267, ¶ 18.

R.C. 121.22

{¶ 14} R.C. 121.22(C) provides that “[a]ll meetings of any public body are declared to be public meetings open to the public at all times.” A “public body” includes a board of a school district. R.C. 121.22(B)(1)(a). The term “meeting” means “any prearranged discussion of the public business of the public body by a majority of its members.” R.C. 121.22(B)(2).
{¶ 15} Nothing in the plain language of R.C. 121.22(B)(2) expressly mandates that a “meeting” occur face to face. To the contrary, it provides that any prearranged discussion can qualify as a meeting. Accordingly, R.C. 121.22 prohibits any private prearranged discussion of public business by a majority of the members of a public body regardless of whether the discussion occurs face to face, telephonically, by video conference, or electronically by e-mail, text, tweet, or other form of communication.
*79 {¶ 16} The fact that the discussion in this case occurred through a series of email communications does not remove that discussion from the purview of R.C. 121.22. In Cincinnati Post, Cincinnati’s city manager, John Shirey, scheduled three series of nonpublic, back to back meetings with members of the Cincinnati City Council regarding the construction of new stadiums for the Cincinnati Bengals and Cincinnati Reds. Less than a majority of council members attended the individual meetings, but a majority of members attended each series of meetings. The Cincinnati Post brought a mandamus action in this court to compel the city to prepare and make available to the public minutes summarizing the discussions at the meetings pursuant to R.C. 121.22.
{¶ 17} In granting the writ, we explained that “[t]he statute that exists to shed light on deliberations of public bodies cannot be interpreted in a manner which would result in the public being left in the dark.” Cincinnati Post, 76 Ohio St.3d at 544, 668 N.E.2d 903. Back to back meetings discussing the same issues of public business could be liberally construed as parts of the same meeting for purposes of R.C. 121.22. Therefore, we held that a majority of council members attended a nonpublic meeting in violation of the statute.
{¶ 18} The distinction between serial in-person communications and serial electronic communications via e-mail for purposes of R.C. 121.22 is a distinction without a difference because discussions of public bodies are to be conducted in a public forum, and thus, we conclude that in this instance, a prearranged discussion of the public business of a public body by a majority of its members through a series of private e-mail communications is subject to R.C. 121.22. This conclusion is consistent with the mandate of R.C. 121.22(A) that the statute “shall be liberally construed to require public officials to take official action and to conduct all deliberations upon official business only in open meetings unless the subject matter is specifically excepted by law.” Allowing public bodies to avoid the requirements of the Open Meetings Act by discussing public business via serial electronic communications subverts the purpose of the act. Compare Del Papa v. Bd. of Regents of Univ. & Community College Sys. of Nevada, 114 Nev. 388, 392, 397, 400, 956 P.2d 770 (1998) (interpreting definition of “meeting” in Nevada’s Open Meeting Law, i.e., a gathering of members of a public body at which a quorum is present to deliberate toward or make a decision on certain matters, to encompass serial electronic communications, consistent with statute stating electronic communication must not be used to circumvent spirit or letter of that law); Wood v. Battle Ground School Dist., 107 Wash.App. 550, 564, 27 P.3d 1208 (2001) (holding exchange of e-mails could constitute a meeting for purposes of Washington’s Open Public Meetings Act in light of the act’s broad definition of a “meeting,” the act’s purpose, and the statutory mandate that the act be liberally construed).
*80 {¶ 19} The dissent maintains that our interpretation of the Open Meetings Act amounts to a judicial rewrite of the statute because “[m]eetings differ from other types of communication because they are events or gatherings at which real-time communication can occur.” Dissenting opinion at ¶ 30. The dissent states that “[b]ecause a meeting is an event that requires parties to participate at the same time, the requirement is that it be ‘prearranged.’ R.C. 121.22(B)(2).” Id. According to the dissent, here there is “no allegation that discussions were either prearranged or that they occurred in real time,” id. at ¶ 37, so the e-mails at issue do not qualify as a meeting.
{¶ 20} Tellingly, the dissent points to no language in R.C. 121.22(B)(2) requiring real-time communication and instead relies on language in unrelated statutory provisions to support its argument that such a requirement exists. Thus, the dissent’s position is not well taken because it necessitates adding language to the General Assembly’s definition of a meeting. Additionally, White alleged that King instructed other board members and district staff to collaborate and issue a response to the editorial and that they did so via e-mail on or about October 11, 2012. Thus, White may be able to prove a set of facts to support his claim that the e-mail discussion in this case was prearranged.
{¶ 21} Regarding the “public business” requirement of R.C. 121.22(B)(2), that phrase is “ ‘commonly understood to mean the business of the government.’ ” Associated Press v. Canterbury, 224 W.Va. 708, 716, 688 S.E.2d 317 (2009), quoting O’Melia v. Lake Forest Symphony Assn., Inc., 303 Ill.App.3d 825, 828, 237 Ill.Dec. 223, 708 N.E.2d 1263 (1999). “That is, ‘the words “public business” * * * relate only to matters within the purview of [a public body’s] duties, functions and jurisdiction.’ ” Id., quoting Lucarelli v. Freedom of Information Comm., Conn.Super. No. CV 91-0063707S, 1992 WL 209848, *3 (Aug. 18, 1992), and citing Kansas City Star Co. v. Fulson, 859 S.W.2d 934, 940 (Mo.App.1993) (“Public business encompasses those matters over which the public governmental body has supervision, control, jurisdiction or advisory power”).
{¶ 22} In Del Papa, Nancy Price, a member of the Board of Regents for the University and Community College System of Nevada, made comments to the press criticizing the conduct of her fellow regents in selecting the presidents of a university and a community college and an external auditor. At least seven board members expressed concerns about her comments to board chairman James Eardley, and Eardley, in turn, asked Constance Howard, the university’s interim director of public information, to draft a response to the comments. Howard drafted a media advisory expressing the board members’ concern that Price’s comments were unsubstantiated, incorrect, and damaging to the board and to the university as a whole and stating that the members felt it was important to publicly protest the statements to protect the board’s integrity and *81 policy making role. Eardley reviewed the draft and disseminated it by facsimile transmission to all board members except Price, along with a memorandum Howard wrote requesting feedback and advice and stating that the advisory would not be released without board approval. The board members responded by way of telephone calls to Eardley, Howard, or both, charged to university calling cards. Some members disagreed with the use of their names and, in varying degrees, the language of the advisory itself, so Eardley did not issue it.
{¶ 23} In that case, the Nevada Supreme Court held that the board violated the state’s Open Meeting Law, which at that time defined a meeting as involving deliberation toward a decision or a decision “ ‘on any matter over which the public body has supervision, control, jurisdiction, or advisory power.’ ” Del Papa, 114 Nev. at 392, 956 P.2d 770, quoting former Nev.Rev.Stat.Ann. 241.015(2), now (3)(a)(l). The court determined that the board violated a statutory prohibition against closed meetings because it acted in its “official capacity as a public body” in deciding not to take action with respect to the media advisory, emphasizing the board’s use of university resources and the fact that the advisory “was drafted as an attempted statement of University policy.” Id. at 401.
{¶ 24} Similarly, in this case, King allegedly instructed district staff members to assist a majority of board members in preparing a board response to an editorial that criticized one of its decisions. Subsequently, a majority of the board members voted to ratify the board’s response at a public meeting, further indicating that the response fell within the purview of the board’s duties, functions, and jurisdiction because under the Open Meetings Act, when a board of education formally votes to ratify a prior action, the ratified action constitutes “public business” under the statute. We conclude, in accord with the analysis in Del Papa, that the facts alleged in the amended complaint filed in this case support the conclusion that the e-mail discussion here qualified as a discussion of public business by the board.
Conclusion
{¶ 25} Taking the material allegations in the amended complaint as true and construing all reasonable inferences in favor of White, in accord with State ex rel. Midwest Pride IV, 75 Ohio St.3d at 570, 664 N.E.2d 931, we conclude that White may be able to prove a set of facts to support his claim that may entitle him to relief. As demonstrated in this case, serial e-mail communications by a majority of board members regarding a response to public criticism of the board may constitute a private, prearranged discussion of public business in violation of R.C. 121.22 if they meet the requirements of the statute. Accordingly, the judgment of the appellate court affirming the trial court’s dismissal of White’s complaint *82 pursuant to Civ.R. 12(C) is reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
Pfeifer, Kennedy, French, and O’Neill, JJ., concur.
Lanzinger, J., dissents, with an opinion joined by O’Connor, C.J.