(Nos. 90771, 90772, 90778 cons

PAUL D. CARROLL, as Adm'r of the Estate of Joshua A. Carroll, Deceased, Appellee, v. JERRY PADDOCK *et al.*, Appellants.

*Opinion filed February 7, 2002.*

GARMAN, J., took no part.

Evan H. Johnson and Robert C. Bollinger, of Erickson, Davis, Murphy, Johnson, Griffith & Walsh, Ltd., of Decatur, for appellants Jerry Paddock, Rod Neeson and the Human Resources Center of Edgar and Clark Counties.

Richard F. Record, Jr., and John F. Watson, of Craig & Craig, of Mattoon, for appellant Hospital & Medical Foundation of Paris, Inc.

Stephen J. Hough, of Croegaert, Clark & Hough, Ltd., of Olney, for appellant Mamerto Guinto.

Brent D. Holmes and Jason M. Crowder, of Heller, Holmes & Associates, P.C., of Mattoon, for appellee.

JUSTICE KILBRIDE delivered the opinion of the court:

The primary issue in this appeal is whether a not-for-profit charitable hospital and a not-for-profit mental-health-care organization are "local public entities" within the meaning of section 1—206 of the Local Governmental and Governmental Tort Immunity Act (Tort Immunity Act or Act) (745 ILCS 10/1—206 (West 2000)). Plaintiff, Paul D. Carroll, as administrator of his son Joshua's estate, brought this wrongful-death action against defendants Jerry Paddock, Rod Neeson, Human Resources Center of Edgar and Clark Counties (HRC), Paris Community Hospital (Hospital) and Dr. Mamerto Guinto, alleging that the defendants' malpractice caused Joshua's death by suicide. The circuit court of Edgar County held that the action was time barred by the Act's one-year statute of limitations. 745 ILCS 10/8—101 (West 2000).

The appellate court reversed and remanded, finding that HRC and the Hospital are not local public entities within the meaning of the Tort Immunity Act and, thus, neither those entities nor their employees are entitled to invoke the protection of the Act. 317 Ill. App. 3d 985, 995. We consolidated and granted all of defendants' petitions for leave to appeal (177 Ill. 2d R. 315) and now affirm the judgment of the appellate court.

## BACKGROUND

On April 14, 1997, Paul and Patricia Carroll brought their son, Joshua, to the emergency room of Paris Community Hospital after Joshua attempted to commit suicide. Joshua was seen by Dr. Guinto, an employee of the Hospital, and Jerry Paddock, an employee of HRC. Joshua was discharged without being admitted. On April 15, 1997, Paul and Patricia took Joshua to HRC, where he received psychological assessment, care and treatment from Rod Neeson. Later that morning, Joshua took his own life.

On April 15, 1999, plaintiff filed a wrongful-death action against defendants. HRC, Paddock, Neeson, and Guinto filed motions to dismiss pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 2000)), arguing plaintiff's complaint was not timely filed under the one-year statute of limitations contained in the Tort Immunity Act. The Hospital filed a motion for summary judgment on the same ground. In their motions, the defendant entities claimed that they were not-for-profit corporations organized for the purpose of conducting public business and that they and their employees were local public entities entitled to assert immunities and defenses afforded by the Act.

Plaintiff responded that HRC and the Hospital did not qualify as local public entities under the Act. In the alternative, plaintiff argued that section 1—206 of the Act constitutes special legislation in violation of article IV, section 13, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IV, § 13) and that section 1—206 of the Act delegates tort immunity to private entities in violation of article I, section 12, and article XIII, section 4, of the Illinois Constitution (Ill. Const. 1970, art. I, § 12; art. XIII, § 4).

The complaint, exhibits and discovery depositions filed of record supply a factual basis for assessing the status of defendants under the Act. HRC is a not-for-profit corporation. It is composed of three divisions: developmental disabilities, community services, and clinical services. The clinical services division provides outpatient mental-health services, and its employees administered mental-health screening to Joshua and assessed his condition.

HRC came into being as a result of the merger of two existing not-for-profit corporations known as the Edgar County Mental Health Center and the Edgar County Alcohol and Drug Abuse Council. Following the merger,

the entity assumed its present designation as the Human Resources Center of Edgar and Clark Counties. HRC's board of directors consists of private citizens, as did its original incorporators.

According to its articles of incorporation, HRC is organized "exclusively for charitable and educational purposes, the purposes being limited to those set forth in section 501(c)(3) of the Internal Revenue Code (26 U.S.C. § 501(c)(3) (1994)." The articles also provide that "no part of [HRC's] net income will inure to the benefit of private individuals" and "the organization will not be operated for the benefit of private individuals or designated individuals, the creators or their families, or persons controlled directly or indirectly by such private interest." Further, HRC's mission statement explains that the corporation shall "promote and conserve the mental health of the people of Edgar and Clark Counties."

In a discovery deposition, the executive director of HRC, John Young, testified about the operations of that entity. He stated that HRC provides clinical services, including outpatient mental-health care and substance-abuse evaluations and classes. According to Young, HRC also furnishes services for developmentally disabled persons, including placement of those individuals with private corporations for work experience and income. Young further stated that HRC renders community services through contracts with area hospitals and health-care providers and that HRC provides laundry services for many private entities.

Like HRC, the Hospital is a not-for-profit organization. Its purpose, as stated in the articles of incorporation, is:

"To conduct and carry on the work of the corporation not for profit but exclusively for scientific, educational, and charitable purposes in such a manner that no part of its income or property shall inure to the private benefit of any

donor, member, officer, or individual having a personal or private interest in the activities of the corporation.

\* \* \*

To operate a charitable hospital in Edgar County, Illinois, for the care of the sick of the area without regard to their ability to pay for such services and without regard to their race, color, or creed."

The Hospital's board of directors does not include members of the county board of Edgar County. It is composed primarily of community business representatives.

The interim administrator of the Hospital, Chris Ellington, testified at his discovery deposition that the Hospital is managed by his employer, Allied Management Services, a not-for-profit corporation, owned by another not-for-profit corporation, Norton Health Care, Inc., of Louisville, Kentucky. Allied Management Services charges an annual management fee of $132,000. In addition to this fee, the hospital pays salaries to the chief executive officer and chief financial officer, both of whom are selected by Allied Management Services.

According to Ellington, the hospital's services are on a fee-for-service basis. It designates services as charity care only if collection efforts have been unavailing. Ellington stated that, to his knowledge, there was no difference in the purpose and operation of the defendant not-for-profit hospital and other for-profit hospitals.

The bylaws of the Hospital establish classes of members. Individuals can become members of the Hospital by making donations to the Hospital. Members are entitled to vote at annual and special meetings.

Following two hearings, the trial court granted the defendants' motions, concluding HRC and the Hospital are "local public entities" within the meaning of section 1—206 of the Tort Immunity Act (745 ILCS 10/1—206 (West 2000)). The trial court also rejected plaintiff's

constitutional challenges to section 1—206 of the Act. Plaintiff appealed.

In reversing, the appellate court held that neither HRC nor the Hospital are "local public entities" within the meaning of section 1—206 of the Tort Immunity Act. 317 Ill. App. 3d at 995. The court primarily relied on the fact that neither of the entities were almost entirely government funded. 317 Ill. App. 3d at 994-95. Having determined that the Act did not apply, the court declined to consider plaintiff's constitutional challenges to section 1—206. 317 Ill. App. 3d at 995. We consolidated and allowed defendants' petitions for leave to appeal.

## ANALYSIS

The present matter comes to this court following the circuit court's decision to grant three motions to dismiss pursuant to section 2—619(a)(5) and one motion for summary judgment. An appeal from a section 2—619 dismissal is the same in nature as one following a grant of summary judgment: each matter is given *de novo* review. *Guzman v. C.R. Epperson Construction, Inc.*, 196 Ill. 2d 391, 397 (2001). In both instances, the reviewing court must ascertain whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993).

Defendants argue that both HRC and the Hospital are local public entities within the meaning of section 1—206 of the Tort Immunity Act. Thus, the issue before us is one of statutory construction.

The most fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent. *In re Estate of Andernovics*, 197 Ill. 2d 500, 507 (2001). The statute's language is the best indicator of such intent. *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 504 (2000). When interpreting a

statute, we must, however, give effect to the entire statutory scheme rather than looking at words and phrases in isolation from other relevant portions of the statute. *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 504 (2000). Put another way, statutes should be construed as a whole with each provision evaluated in connection with every other section. *Primeco Personal Communications, L.P. v. Illinois Commerce Comm'n*, 196 Ill. 2d 70, 88 (2001).

As provided within the statute, the purpose of the Tort Immunity Act is "to protect local public entities and public employees from liability arising from the operation of government." 745 ILCS 10/1—101.1 (West 2000). The Act defines the term "[l]ocal public entity" as:

"a county, township, municipality, municipal corporation, school district, school board, educational service region, regional board of school trustees, community college district, community college board, forest preserve district, park district, fire protection district, sanitary district, museum district, emergency telephone system board, and all other local governmental bodies. 'Local public entity' also includes library systems and any intergovernmental agency or similar entity formed pursuant to the Constitution of the State of Illinois or the Intergovernmental Cooperation Act as well as *any not-for-profit corporation organized for the purpose of conducting public business*. It does not include the State or any office, officer, department, division, bureau, board, commission, university or similar agency of the State." (Emphasis added.) 745 ILCS 10/1—206 (West 1998).

The appellate court correctly noted that no Illinois court has specifically defined the phrase "organized for the purpose of conducting public business." 317 Ill. App. 3d at 991. The court then went on to analyze several appellate court cases and one United States district court case that have applied this language in different fact situations. See *Smith v. Northeast Illinois Regional Commuter R.R. Corp.*, 210 Ill. App. 3d 223 (1991); *Johnson v.*

*Decatur Park District*, 301 Ill. App. 3d 798 (1998);
*O'Melia v. Lake Forest Symphony Ass'n*, 303 Ill. App. 3d
825 (1999); *Niehaus v. Rural Peoria County Council on
Aging, Inc.*, 314 Ill. App. 3d 665 (2000); *McQueen v.
Shelby County*, 730 F. Supp. 1449 (C.D. Ill. 1990). In four
of those cases, the court considered to what extent the
entity in question relied upon public funding in order to
determine whether the entity was "organized for the
purpose of conducting public business." See *Smith*, 210
Ill. App. 3d at 227 (entity with no shareholders, funded
with public funds that operates its commuter rail line in
the public interest was organized for the purpose of
conducting public business); *Johnson*, 301 Ill. App. 3d at
811 (regardless of its mission statement or sources of
funding, an entity that existed to benefit its members,
not the public at large, was not a public entity under the
Act); *Niehaus*, 314 Ill. App. 3d at 670 (entity that received
65% of its cash funds from government sources, includ-
ing local government funding, was not "almost entirely
government funded" and thus was not organized for the
purpose of conducting public business); *McQueen*, 730 F.
Supp. at 1453 (entity that received over 90% of its financ-
ing from state and local sources was organized for the
purpose of conducting public business).

In light of these cases, the appellate court concluded
that public funding is a determinative factor as to
whether an entity is a local public entity under the Act.
317 Ill. App. 3d at 994-95. With regard to HRC, the court
reasoned:

> "HRC argues that it receives substantial government
> funding—66.13% from government grants and member-
> ship dues in fiscal year 1998 and 55% from fees and grants
> from governmental agencies in fiscal year 1997. ***
>
> We conclude that HRC is not 'organized for the purpose
> of conducting public business' and is not a 'local public
> entity' under the Act. HRC is not almost entirely govern-
> ment funded; the fact that it receives some grants from

government sources does not bring it within the scope of the Act." 317 Ill. App. 3d at 994.

In relation to the Hospital, the appellate court stated:

"The Hospital obtained 49.1% of its revenue from private sources, namely, insurance payments and self-pay collections. It receives the remainder of its revenue from federal programs—Medicaid and Medicare. The only local government funding is provided by Edgar County through a contract for ambulance services. *** We conclude that the Hospital is not government funded, nor is it almost entirely government funded." 317 Ill. App. 3d at 994-95.

Having concluded that HRC and the Hospital were not government funded, the appellate court held that neither was a local public entity under the Act and, therefore, neither the entities nor their employees were entitled to invoke the one-year statute of limitations pursuant to section 8—101 of the Act. 317 Ill. App. 3d at 994-95.

Although the appellate court reached the correct conclusion, we believe the court placed too much emphasis on government funding. Irrespective of the degree of government funding, a not-for-profit corporation must be "organized for the purpose of conducting public business" in order to satisfy the definition of a "[l]ocal public entity." 745 ILCS 10/1—206 (West 2000). The term "public business" is not defined in the Act. As indicated by the appellate court, every undefined word in a statute must be ascribed its ordinary and popularly understood meaning. *Texaco-Cities Service Pipeline Co. v. McGaw*, 182 Ill. 2d 262, 270 (1998). The appellate court went on to quote the *O'Melia* court observation that:

" ' "Public" is defined as "[p]ertaining to a state, nation, or whole community; proceeding from, relating to, or affecting the whole body of people or an entire community. Open to all ***. Belonging to the people at large; *** not limited or restricted to any particular class of the community." Black's Law Dictionary 1227 (6th ed. 1990). *** Thus, to conduct "public business" under the Act, a

corporation must pursue an activity that benefits the entire community without limitation. In addition, the phrase "public business" is also today commonly understood to mean the business of the government.' " 317 Ill. App. 3d at 992, quoting *O'Melia*, 303 Ill. App. 3d at 828.

We agree with this definition of "public business" and we hereby adopt it as our own.

While HRC and the Hospital were organized for charitable purposes, the characteristics making a not-for-profit corporation a charitable organization do not, without more, also qualify the corporation as a "local public entity" under the Tort Immunity Act. See 317 Ill. App. 3d at 994-95. Both HRC and the Hospital conduct operations common to many entities in the private sector. Interim administrator Ellington admitted that there was no difference in the purpose and operation of the defendant not-for-profit Hospital and other for-profit hospitals. Moreover, both HRC and the Hospital were privately created and are privately managed.

Furthermore, the board of directors of each not-for-profit consists solely of private citizens. There is no evidence in the record indicating that the entities are subject to the control of the county board or any other unit or agency of local government. Without evidence of local governmental control, it cannot be said that a not-for-profit corporation conducts "public business" for purposes of the Act. Thus, in order to receive the benefits of the Act, the not-for-profit corporation must also be subject to the kinds of organizational regulations and control that are typical of other governmental units.

An indicia of the requisite control might be shown by evidence that the governing body of the not-for-profit corporation is subject to regulations such as the Open Meetings Act (5 ILCS 120/1.01 *et seq.* (West 2000)) or the Freedom of Information Act (5 ILCS 140/1 *et seq.* (West 2000)) or is otherwise " '[o]pen to *** the [public] at large' " (*O'Melia*, 303 Ill. App. 3d at 828, quoting Black's

Law Dictionary 1227 (6th ed. 1990)). The necessary control might also be evinced by particular local ordinances that dictate the means and methods to be used by the not-for-profit corporation in conducting its business. Other indicia of control might include evidence that members of the county board or other local governing bodies control the governing body of the not-for-profit corporation.

Private endeavors often improve or affect the public interest, but that fact standing alone does not transform those private enterprises into public businesses. Undoubtedly, health care is an endeavor in the public interest. Nonetheless, it cannot be said that a not-for-profit. hospital and a not-for-profit mental-health-care organization are the same as public health-care facilities operated by public employees and controlled by governmental officials or a governmental entity.

Public business is the business of government and a local public entity must either be owned by or operated and controlled by a local governmental unit. Immunity under the Act only attaches to liability arising from the operation of government. 745 ILCS 10/1—101.1 (West 2000). Therefore, a not-for-profit is involved in the operation of the government's public business if and only if the not-for-profit is tightly enmeshed with government either through direct governmental ownership or operational control by a unit of local government.

As to the Hospital's contention that its activities fall within the ambit of "conducting public business" because the Act itself sets out detailed provisions regarding "hospital activities" (see 745 ILCS 10/6—101 through 6—110 (West 2000)), the appellate court was correct that the Hospital has misread the Act. 317 Ill. App. 3d at 994. To receive immunity from injuries resulting from "hospital activities," it must initially be determined that the entity is a "local public entity" under the Act. 317

28

Ill. App. 3d at 994. Simply because an entity engages in "hospital activities" does not necessarily mean that the entity conducts "public business" under section 1—206 of the Act. 317 Ill. App. 3d at 994.

Given that the Act does not apply to HRC or the Hospital, we, like the appellate court, decline to address the constitutional issues raised by the plaintiff.

## CONCLUSION

For the above-stated reasons, we hold that neither the Human Resources Center of Edgar and Clark Counties nor Paris Community Hospital were organized for the purpose of conducting public business. Accordingly, neither of those not-for-profit corporations or their employees are entitled to assert the immunities and defenses contained within the Tort Immunity Act. The judgment of the appellate court is therefore affirmed.

*Affirmed.*

JUSTICE GARMAN took no part in the consideration or decision of this case.