REGINA M. REED, Plaintiff-Appellant, v. RICHARD WHITE, Ex'r of the Estate of Nelda Harris, d/b/a Harris Farms, *et al.*, Defendants-Appellees.

Fifth District   No. 5—08—0446

Opinion filed January 12, 2010.—Rehearing denied February 10, 2010.

R. Courtney Hughes, of Hughes Law Firm, of Carbondale, for appellant.

Richard A. Green and Timothy D. Denny, both of Feirich, Mager, Green, Ryan, of Carbondale, for appellees.

PRESIDING JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, Regina M. Reed, filed a two-count complaint against defendants, Richard White, as the executor of the estate of Nelda Harris, doing business as Harris Farms, and Ronald D. Reed, plaintiff's husband, after plaintiff was involved in an accident with a John Deere tractor and farm implement that was being driven by Ronald as a part of his employment with Harris Farms. Plaintiff was a part-time employee of Harris Farms, but she was not scheduled to work on the day of the accident. At the time of the accident, plaintiff was driving her 1987 Chevrolet Suburban and was on her way to drop off tools to Ronald's brother, Terry, who was also an employee of Harris Farms, per her husband's request. Ronald's farm implement was so wide it extended over the centerline of the road. As plaintiff crested a hill, the

farm implement was in her lane, causing her to crash into it and sustain serious injuries and incur medical bills of at least $191,000. After the accident, Harris Farms voluntarily began paying plaintiff workers' compensation benefits, in the form of temporary total disability (TTD) and medical bills. Despite these payments, plaintiff filed a complaint for negligence. Defendants admitted that Ronald's operation of the tractor and implement without an escort or lead vehicle was negligent; however, defendants asserted that plaintiff was an employee at the time of the accident and was limited by the exclusivity provisions found in the Workers' Compensation Act (Act) (820 ILCS 305/1 et seq. (West 2002)). Accordingly, defendants filed a motion to dismiss pursuant to section 2—619 of the Code of Civil Procedure (Code) (735 ILCS 5/2—619 (West 2006)), which the trial court granted. The issue raised in this appeal is whether the trial court erred in dismissing plaintiff's complaint with prejudice pursuant to section 2—619 of the Code. We reverse and remand.

## BACKGROUND

On May 16, 2003, at approximately 1:10 p.m., plaintiff crested a hill and ran into Ronald's farm implement. Plaintiff was not scheduled to work on the day in question and was driving her personal vehicle. Ironically, plaintiff was on her way to deliver tools to Ronald's brother, Terry, per Ronald's request. Ronald, Terry, and plaintiff were all employees of Harris Farms. Plaintiff became an employee of Harris Farms in January 2003 after doing numerous odd jobs for Harris Farms, where her husband was employed. Nelda Harris, an owner of Harris Farms but now deceased, decided that plaintiff should be compensated for her work, and plaintiff became a part-time employee. However, even after plaintiff was officially employed by Harris Farms, she would continue to volunteer her services around the farm, doing small jobs without expecting to be paid.

Ronald was plaintiff's supervisor and the overall manager for Harris Farms. He would turn in the hours plaintiff worked each week to Nelda, who would then compensate plaintiff at the rate of $6 per hour. On the date of the accident, Ronald, who was working for Harris Farms, called plaintiff at least three times and asked her to take some tools to Terry because the vehicle Terry was driving had broken down and needed to be fixed. Terry and Ronald were planting crops for Harris Farms at two separate locations and were trying to beat the oncoming rain. Plaintiff was wearing "dress" clothes rather than her usual work clothes. Normally, when plaintiff was working, she would drive Harris Farms' blue truck, but on the date of the accident, she was driving her personal vehicle. Both Ronald and plaintiff testified in

their depositions that plaintiff was not working on the date in question but was scheduled to be off in order to take care of some personal commitments. No hours were turned in for plaintiff's activities on that date, and plaintiff was not paid for any work conducted on May 16, 2003.

After plaintiff finally agreed to take the tools to Terry, she set out upon her journey. As she crested a hill, she ran into Ronald's farm implement, which was too wide and was in plaintiff's lane. Plaintiff sustained numerous injuries and spent more than a week at St. Louis University Hospital, where she underwent multiple surgeries. Plaintiff was then transferred to a rehabilitation facility in Herrin. She was released from the rehabilitation facility after four days, but she was still recuperating from her injuries.

On June 16, 2003, one month after the accident, when plaintiff was still in a wheelchair and unable to do anything, a recorded conversation took place between her and an investigator from Country Companies, Harris Farms' insurance carrier. During that conversation, the following colloquy ensued:

"Were you workin' at the time for Harris?
Yes.
Parta' your work, okay[?]
Yes."

In later depositions, plaintiff denied that she was working for Harris Farms at the time of the accident and said she was running a personal errand for her husband, Ronald. Ronald agreed with plaintiff that plaintiff was performing a personal errand.

Harris Farms began voluntarily paying workers' compensation to plaintiff after the accident. In December 2003, plaintiff called Stephanie Slayback, the workers' compensation adjuster at Country Companies, and told her she thought she was going to be released to go back to work. However, two months later, plaintiff was still experiencing foot problems that required treatment, and she was not released to return to work. In February 2004, plaintiff's doctor recommended ligament-reconstruction surgery, and plaintiff requested that Country Companies reinstate the payment of TTD benefits, which it did. Plaintiff called Slayback on another occasion after Country Companies failed to pay benefits, and Slayback looked into the matter.

On February 10, 2005, plaintiff filed a two-count complaint. Count I alleged negligence on the part of Ronald, and count II alleged vicarious liability against Richard White, as the executor of the estate of Nelda Harris. On April 15, 2005, defendants filed a motion to dismiss based on the exclusivity provisions of the Act. On July 29, 2005, the trial court denied defendants' motion. On April 16, 2007, plaintiff filed

an application for benefits pursuant to the Act. In June 2007, plaintiff's attorney called defense counsel for Harris Farms, requesting that Country Companies authorize and agree to pay medical expenses associated with a surgery recommended by plaintiff's doctor. In October 2007, plaintiff's attorney called the workers' compensation defense counsel twice with regard to (1) payment for a proposed surgery and (2) medications. On November 21, 2007, TTD benefits were reinstated following the surgery. On February 11, 2008, after plaintiff had been released from her surgeon's care, she voluntarily dismissed her workers' compensation claim.

On July 15, 2008, defendants filed the instant motion to dismiss pursuant to section 2—619 of the Code. The trial court granted defendants' motion to dismiss. Plaintiff now appeals.

## ANALYSIS

The issue we are asked to address is whether the trial court erred in dismissing plaintiff's claim with prejudice. Plaintiff contends the trial court erred in granting defendants' motion to dismiss pursuant to section 2—619 of the Code because genuine issues of material fact exist regarding whether plaintiff was an employee at the time the crash occurred. Defendants respond that the trial court did not err in dismissing plaintiff's cause of action because plaintiff was precluded from a civil recovery pursuant to the doctrine of judicial estoppel and the exclusivity provision of the Act. After careful consideration, we agree with plaintiff.

A section 2—619 motion is similar to a motion for a summary judgment and allows for the dismissal of a complaint on the basis of issues of law or easily proven facts. *Carroll v. Paddock*, 199 Ill. 2d 16, 22, 764 N.E.2d 1118, 1122 (2002). When a defendant files a section 2—619 motion, the defendant admits all well-pled facts in the complaint, along with any reasonable inferences that may be drawn from those facts, but asks the court to conclude that there is no set of facts which would entitle the plaintiff to recover. *Advocate Health & Hospitals Corp. v. Bank One, N.A.*, 348 Ill. App. 3d 755, 759, 810 N.E.2d 500, 504 (2004). We apply a *de novo* standard of review to the dismissal of a complaint under section 2—619. *Carroll*, 199 Ill. 2d at 22, 764 N.E.2d at 1122.

The Act "was designed to provide speedy recovery without proof of fault for accidental injuries" that occur in the workplace during the course of work. *Fregeau v. Gillespie*, 96 Ill. 2d 479, 486, 451 N.E.2d 870, 873 (1983). The compensation provided by the Act is the exclusive remedy for such injuries. 820 ILCS 305/5(a), 11 (West 2002). The issue of whether there is an employer-employee relationship is ordinarily a

question of fact. *Saldana v. Wirtz Cartage Co.*, 74 Ill. 2d 379, 385 N.E.2d 664 (1978); *Pearson v. Industrial Comm'n*, 318 Ill. App. 3d 932, 935, 743 N.E.2d 685, 687 (2001). The only time it is not a question of fact is when there is no conflict in the evidence and only one conclusion can reasonably be drawn. *Pearson*, 318 Ill. App. 3d at 935, 743 N.E.2d at 687.

In the instant case, there is some conflict in the evidence, due in large part to plaintiff's initial statement to the insurance company. However, it is clear that plaintiff was not scheduled to work on the day of the accident and was not paid for working on the day in question. Furthermore, plaintiff was driving her personal vehicle, rather than the Harris Farms truck she normally drove when performing work tasks, and was wearing non-work clothing. While plaintiff initially said she was performing work-related duties at the time of the accident, she has since denied that she was performing work-related activities at the time of the accident. Plaintiff's husband, who also served as her immediate supervisor, is adamant that plaintiff was running a personal errand for him per his repeated requests. Under these circumstances, we believe there is a question of fact whether plaintiff was an employee at the time of the accident. However, even though we agree with plaintiff that her status as an employee or nonemployee is a factual question, we must address defendants' contention that plaintiff is estopped from seeking civil damages because she received workers' compensation benefits.

It is well settled that injured employees are not permitted to seek and recover compensation under both the Act and the common law. In *Fregeau*, the plaintiff, who allegedly had been struck by a coworker during work, filed a civil suit against the coworker. In answering the complaint, the defendant coworker asserted that the plaintiff previously had filed a claim against his employer under the Act, and the defendant moved for a summary judgment. *Fregeau*, 96 Ill. 2d at 480-81, 451 N.E.2d at 870. The trial court granted a summary judgment in favor of the defendant, but the appellate court reversed. The plaintiff's claim under the Act was still pending before the Industrial Commission when the case was presented to the Illinois Supreme Court. The only issue before the Industrial Commission, however, was the nature and extent of the plaintiff's injuries, because the employer previously had admitted liability under the Act. *Fregeau*, 96 Ill. 2d at 481, 451 N.E.2d at 871. The supreme court reinstated the judgment for the defendant, finding that once an employee chooses to obtain compensation under the Act, any civil action is barred. *Fregeau*, 96 Ill. 2d at 486, 451 N.E.2d at 873.

Since *Fregeau* was decided, other courts have considered similar questions of what to do when a plaintiff seeks to maintain a civil action after he or she has already filed a claim under the Act or has received compensation from an employer pursuant to the Act. The resulting decisions indicate that the questions which should be answered in these types of cases are as follows: (1) What constitutes the receipt of compensation under the Act? or (2) At what point has a plaintiff taken the express position that the injury is compensable under the Act so that he or she is barred from taking the mutually exclusive position that the injury was intentional? *Zurowska v. Berlin Industries, Inc.*, 282 Ill. App. 3d 540, 543, 667 N.E.2d 588, 590 (1996).

In the instant case, unlike *Fregeau*, plaintiff did not file a workers' compensation case first and then seek to file a civil suit. Instead, Harris Farms started making TTD payments to plaintiff without plaintiff filing suit under the Act. Therefore, the instant case is similar to *Copass v. Illinois Power Co.*, 211 Ill. App. 3d 205, 569 N.E.2d 1211 (1991), in which the plaintiff's husband was killed in a job-related explosion, and within three days of his death, the decedent's employer, Illinois Power Company, began making payments to the plaintiff, informing her she was entitled to them under the Act. The plaintiff later filed a civil action against Illinois Power Company, alleging that the decedent's death was the result of an intentional tort. The *Copass* court held that even though the plaintiff had received more than $21,000 in payments and her attorney had contacted the claims supervisor to question how the average weekly wage was calculated, those payments could not be considered compensation under the Act. The *Copass* court stated as follows:

> "We hold the uninitiated payments plaintiff accepted from Illinois Power are not sufficient to constitute her election to the benefits provided by the Act. Simply accepting voluntary payments from Illinois Power, without taking any affirmative action before the Commission, is not a clear and unequivocal act evidencing an assertion that the death is compensable under the Act. To hold otherwise would allow employers to send payments to injured parties or bereaved families, characterize the payments as workers' compensation benefits, and terminate any option the employee or family might have to avoid the exclusivity-of-remedy rule under the Act." *Copass*, 211 Ill. App. 3d at 211-12, 569 N.E.2d at 1215.

Here, as in the *Copass* case, the benefits received by plaintiff in the form of the payment of medical bills and TTD benefits were voluntarily made by the employer. The mere acceptance of unsolicited benefits offered by an employer is insufficient to bar a plaintiff's common law claim. *Wren v. Reddick Community Fire Protection District*, 337 Ill. App. 3d 262, 268, 785 N.E.2d 1052, 1057 (2003).

In *Wren*, volunteer firefighters who were injured while riding on a fire truck brought a negligence action against the fire protection district, the driver of the truck, and the driver of the other vehicle. The plaintiffs later filed claims for workers' compensation benefits shortly before the statute of limitations for those claims was due to expire. *Wren*, 337 Ill. App. 3d at 264, 785 N.E.2d at 1054. The trial court entered a summary judgment for the driver of the truck and the district on the basis that workers' compensation benefits which had been voluntarily paid were the exclusive remedy. The reviewing court reversed, finding that the volunteer firefighters' acceptance of unsolicited workers' compensation benefits did not bar the negligence claim and that the firefighters did not forfeit their right to sue for negligence by filing a workers' compensation claim. While a person may not recover payment from an employer by means of both a workers' compensation claim and a common law negligence action, "nothing should prohibit a cautious plaintiff with a pending lawsuit from also filing a workers' compensation claim to avoid the bar of the statute of limitations." *Wren*, 337 Ill. App. 3d at 268, 785 N.E.2d at 1057-58.

Relying on *Wren*, we find that plaintiff's April 2007 filing of a workers' compensation claim does not estop her from pursuing her common law negligence claim filed in 2005. Here, as in *Wren*, plaintiff was cautious, choosing to file a workers' compensation claim just before the statute of limitations would have run. Plaintiff was merely protecting her rights.

Nevertheless, defendants maintain that plaintiff's receipt of benefits and her attendance at a medical exam prior to hip surgery distinguish the case from *Wren* and preclude her from pursuing a common law negligence claim. We disagree. Except for her initial response, plaintiff has consistently maintained that she was not working at the time of the accident and that the employer-employee relationship did not exist. Her denials started long before obtaining legal counsel. Plaintiff filed her civil suit on February 10, 2005, yet defendants chose to continue to treat this as a workers' compensation matter. Based upon our review of the law in Illinois, there is nothing in the record that estops plaintiff from pursuing a common law negligence claim. We find that none of the actions taken by plaintiff with regard to the workers' compensation benefits voluntarily offered by Harris Farms bar her from pursuing a common law negligence claim.

## CONCLUSION

For the foregoing reasons, the order of the circuit court of Jackson County granting defendants' motion to dismiss is hereby reversed,

982

and the cause is remanded for further proceedings consistent with this decision.

Reversed; cause remanded.

WELCH and WEXSTTEN, JJ., concur.