2020 IL App (1st) 200218-U

No. 1-20-0218

Order filed February 13, 2020

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| KARLA KATZ OBERHOLTZER, | ) | |
| | ) | |
|     Petitioner-Appellee, | ) | |
| | ) | |
|   v. | ) | |
| | ) | |
| THE COOK COUNTY OFFICERS ELECTORAL | ) | |
| BOARD and ITS MEMBERS; KAREN YARBROUGH, | ) | |
| Cook County Clerk, by Her Designee Sisavanh Baker, | ) | Appeal from the |
| Chair; KIMBERLY FOXX, Cook County State's | ) | Circuit Court of |
| Attorney, by Her Designee Jessica M. Scheller, Member; | ) | Cook County |
| DOROTHY BROWN, Cook County Clerk of the Circuit | ) | |
| Court, by Her Designee Meridth Hammer, Member; and | ) | No. 2020 COEL 3 |
| CAROLINE PATRICIA JAMIESON; | ) | |
| | ) | Honorable |
|     Respondents, | ) | Paul A. Karkula, |
| | ) | Judge Presiding. |
| (The Cook County Officers Electoral Board And Its | ) | |
| Members; Karen Yarbrough, Cook County Clerk, by Her | ) | |
| Designee Sisavanh Baker, Chair; Kimberly Foxx, Cook | ) | |
| County State's Attorney, by Her Designee Jessica M. | ) | |
| Scheller, Member; Dorothy Brown, Cook County Clerk of | ) | |
| the Circuit Court, by Her Designee Meridth Hammer, | ) | |
| Member, Respondents-Appellees; and Caroline Patricia | ) | |
| Jamieson, Respondent-Appellant). | ) | |

_____

JUSTICE BURKE delivered the judgment of the court.
Justice Connors concurred in the judgment.
Justice Lampkin dissented.

**ORDER**

¶ 1    *Held*:   We affirm the judgment of the circuit court which reversed a decision of the Cook County Officers Electoral Board.

¶ 2    The Objector, Karla Katz Oberholtzer, filed a petition in the circuit court seeking judicial review of a decision by the Cook County Officers Electoral Board (Electoral Board), which overruled her petition to prevent Caroline Patricia Jamieson's (the Candidate) name from appearing on the ballot at the March 17, 2020, general primary election as a candidate for the office of Judge of the Circuit Court, Cook County Judicial Circuit. The Objector objected to the placement of the Candidate's name on the ballot on the basis that the Candidate did not comply with section 7-10.2 of the Election Code (10 ILCS 5/7-10.2 (West 2018)) by failing to disclose on her nomination papers that she had changed her name. The Electoral Board overruled the objection finding that the Candidate's nomination papers complied with section 7-10.2. The Objector sought judicial review of the Electoral Board's decision in the circuit court of Cook County. The circuit court granted the Objector's petition for judicial review, reversed the Electoral Board's decision, and ordered that the Candidate's name be removed from the ballot for the general primary election. The Candidate now appeals that ruling. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 3                                    I. BACKGROUND

¶ 4    Section 2A-1.1(a) of the Election Code provides that in even-numbered years, an election known as the general primary election shall be held on the third Tuesday in March. 10 ILCS 5/2A-1.1(a) (West 2018). The Candidate filed nomination papers to be included on the ballot for the

March 17, 2020, general primary election for the office of Judge of the Circuit Court, Cook County Judicial Circuit. The Candidate listed her name on her nomination papers as "Caroline Patricia Jamieson."

¶ 5     The Objector filed an Objector's Petition to Candidate's nomination papers on the basis that the Candidate failed to comply with section 7-10.2 of the Election Code by failing to indicate that she had changed her name by using the designation "formerly known as" on her nomination papers. The Objector contended that this section required the Candidate to disclose her formerly used name because she had changed her name within the last three years. The Objector attached a variety of exhibits to the supporting memorandum outlining the Candidate's professional use of her name. The exhibits showed that the Candidate was admitted to the bar in November 1992 as Caroline Patricia Jamieson. Two other exhibits showed that, on both October 2, 2019, and December 6, 2019, the Illinois Attorney Registration and Disciplinary Commission (ARDC) website listed the Candidate's "Full Licensed Name" as "Caroline P. Golden" and her "Full Former Name" as "Caroline Patricia Jamieson." Another exhibit showed that the Candidate had been admitted to the bar of the United States District Court for the Northern District of Illinois as "Caroline P. Golden." The Objector also attached the Candidate's voter registration, which showed her registered to vote as "Caroline Golden," and submitted evidence that the Candidate currently holds elective office for the Board of the School Trustees for Lyons Township Schools under the name "Caroline Golden."

¶ 6     Most relevant here, in November 2017, the Candidate filed nomination papers for the general primary election for the office of Judge of the Circuit Court of Cook County, 4th Judicial Subcircuit under the name "Caroline Jamieson Golden." In conjunction with the nomination papers, the Candidate submitted a loyalty oath, which she signed as "Caroline Golden." Another

exhibit showed that, in March 2018, the Alliance of Bar Associations for Judicial Screening evaluated the Candidate for the primary election under the name "Caroline Jamieson Golden." Similarly, in August 2018, the Candidate applied for the office of associate judge of the Circuit Court of Cook County under the name "Caroline Patricia Golden." The Objector also attached exhibits showing that the Candidate had been practicing law in Illinois under the names "Caroline P. Golden" and "Caroline Jamieson Golden."

¶ 7     The Objector contended that these exhibits demonstrated that, after her marriage, the Candidate ceased using her maiden name of Jamieson and adopted the surname of Golden. The Objector asserted that the Candidate had used the name "Caroline Golden" in every instance and legal context since her marriage except in her most recent effort to obtain the office of Judge of the Circuit Court, Cook County Judicial Circuit. The Objector noted that there was no record in the circuit court indicating that she resumed the use of the name Jamieson as the result of a dissolution of marriage or through a petition to resume the use of her former name. The Objector maintained that there was no evidence that the Candidate had used her maiden name as her surname, either personally or professionally, since her marriage and there was no evidence that she intended to use her maiden name for "anything other than the current election." The Objector contended that the Candidate's use of her maiden name in her nomination papers after legally changing her name upon her marriage and using her married name both professionally and personally was an attempt to deceive the public and violated section 7-10.2 of the Election Code.

¶ 8     The Candidate filed a motion to strike the Objector's petition contending that section 7 10.2 did not bar her from using her maiden name on her nomination papers. The Candidate acknowledged that she had run for office within the last three years using her married name, but asserted that the statute did not prevent a candidate from using her married name, maiden name,

or a combination thereof on her nomination papers. The Candidate further contended that her use of Caroline Jamieson Golden, Caroline P. Golden or Caroline Patricia Jamieson did not constitute a name change under the statute. The Candidate asserted that Caroline was her given first name, Patricia was her given middle name, Jamieson was her maiden name, and Golden was her married name. She asserted that she did not acquire any of these names within the last three years, and, therefore, she was not required to disclose any former names under the statute.

¶ 9      In reply, the Objector contended that the statute required the Candidate to use a name by which she was "commonly known." The Objector maintained that the exhibits attached to the petition demonstrated that the Candidate was commonly known by the surname "Golden," but she neglected to include this surname on her nomination papers. The Objector asserted that the Candidate clearly intended to deceive voters by not including "Golden" as a "formerly known as" descriptor.

¶ 10     Following argument on the motions, a hearing officer issued a report and recommended decision. The hearing officer observed that previous decisions of the Electoral Board had found that the purpose of section 7-10.2 of the Election Code was to prevent candidates from using new names acquired outside of the ordinary name changes that occur in life. The hearing officer found that the Objector's position was not supported by the statute or prior Electoral Board decisions. The hearing officer therefore recommended that the Objector's objection be overruled, the Candidate's nomination papers be deemed valid and her name printed on the ballot for the March 17, 2020, general primary election.

¶ 11     The Objector requested a review of the hearing officer's recommendation by the Electoral Board. At a hearing on the Objector's motion, the Board found that, because the Objector waived a right to an evidentiary hearing before the hearing officer, the Candidate's nominating papers

were "presumptively valid." The Electoral Board subsequently issued a decision in which it adopted the recommendation of the hearing officer. The Electoral Board found that the Candidate's nomination papers complied with section 7-10.2 of the Election Code and previous Electoral Board decisions. The Electoral Board concluded that "the Candidate's use of the name Jamieson does not constitute a name change requiring the listing of 'formally known as' on the nomination papers." The Electoral Board therefore overruled Objector's objection and ordered the Candidate to be printed on the ballot for the March 17, 2020, general primary election.

¶ 12    The Objector filed a petition for judicial review in the circuit court, contending that the Board's interpretation of section 7-10.2 of the Election Code was "legally faulty." The Objector argued that, under the statute, the terms "given name" and "surname" have different meanings. To this end, the Objector asserted that the Candidate changed her surname from "Golden" to "Jamieson," and therefore, she was required to comply with the language of the statute and list her former name with a "formally known as" designation. Following a hearing on the Objector's petition, the circuit court reviewed the exhibits the Objector attached to her petition before the Electoral Board. Based on these exhibits, the court found that the Candidate was admitted to the bar in November 1992 as "Caroline Patricia Jamieson." According to the court, the Candidate later married and petitioned the Illinois Supreme Court to change her name on the master roll of attorneys to "Caroline P. Golden." The court also observed that she was admitted to the United States District Court for the Northern District of Illinois, registered to vote and signed financial instruments under the name "Caroline Golden."

¶ 13    Additionally, the court highlighted the various other instances in her professional life where she used Golden as her surname and remarked that she had been consistently using the name Caroline Golden for close to the last 20 years. The court noted that there was no record of the

Candidate changing her name to resume the use of her former name, Caroline Patricia Jamieson. The court determined that the Candidate's use of her former name on her nomination papers for the general primary election was "totally, absolutely, positively against the statute." The court therefore reversed the decision of the Electoral Board, granted the petition for removal, and removed the Candidate from the ballot. The Candidate now appeals.

¶ 14                                    II. ANALYSIS

¶ 15    On appeal, the Candidate contends that the circuit court erred in reversing the decision of the Electoral Board where she was not required to comply with section 7-10.2 of the Election Code because she had not changed her name within the last three years. The Candidate asserts that the Objector failed to meet her burden of proof under the statute because she failed to present any evidence that the Candidate had changed her name within the last three years. The Candidate maintains that the exhibits attached to the Objector's petition illustrate the Candidate's "use" of a different name, but do not evidence any name change requiring disclosure under the statute.

¶ 16    As an initial matter, we note that there has been some dispute regarding whether this court may consider the exhibits attached to the Objector's petition. The Candidate raised this issue both before the Electoral Board and the circuit court. The record shows that the parties agreed to not hold an evidentiary hearing and allowed the hearing officer to make a recommendation based on the law. Before the Electoral Board and the circuit court, the Candidate asserted that the Objector's decision to waive an evidentiary hearing prevented her from presenting any evidence to the Electoral Board. In her Memorandum of Law in Opposition to the Petition for Judicial Review, the Candidate contended that because the Objector waived the evidentiary hearing, "[t]here was no evidence placed before the [Electoral] Board and there are no questions of fact now before the court. *** There are no facts to consider, merely the question of law ruled upon by the [Electoral]

Board." On appeal, the Candidate maintains that the exhibits are unauthenticated hearsay and are not properly part of the record.

¶ 17    The Candidate's contention that by waiving an evidentiary hearing the exhibits attached to the Objector's petition are somehow invalidated is spurious, at best. The hearing officer relied on these exhibits when issuing the report and recommended decision, which the Electoral Board subsequently adopted. Implicit within the Electoral Board's adoption of the hearing officer's report and recommended decision is the evidentiary foundation that formed the report and recommended decision. Therefore, we may properly consider the exhibits. In any event, the information contained on the exhibits was from websites and public records. These sources are sufficiently reliable such that judicial notice may be taken of the information contained therein. See, *e.g.*, *People v. Ware*, 2014 IL App (1st) 120485, ¶ 29 (appellate court may take judicial notice of Illinois Department of Corrections records because they are public documents); *Kopnick v. JL Woode Management Company, LLC*, 2017 IL App (1st) 152054, ¶ 26 (information on City of Chicago's public website subject to judicial notice); *People v. Vara*, 2016 IL App (2d) 140849, ¶ 37 (information on federal government's National Sex Offender Public Website subject to judicial notice); *Village of Catlin v. Tilton*, 281 Ill. 601, 602–03 (1917) (indicating a court may take judicial notice of facts that are not in reasonable dispute in that the facts are either (1) generally known within the jurisdiction, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned). Accordingly, we find we may consider the information contained in exhibits attached to the Objector's petition.

¶ 18                                     A. Standard of Review

¶ 19    Courts of review view an electoral board as an administrative agency. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 209 (2008). On appeal, this court

reviews the decision of the electoral board, not the decision of the circuit court. *Jackson-Hicks v. East St. Louis Board of Election Commissioners*, 2015 IL 118929, ¶ 19. Our standard of review depends on whether the dispute at issue involves questions of fact, law, or mixed questions of fact and law. *Id.* ¶ 20. The electoral board's findings and conclusions on questions of fact are deemed *prima facie* true and correct, and will not be reversed unless they are against the manifest weight of the evidence. *Cinkus*, 228 Ill. 2d at 210. Where the historical facts are admitted or established, but there is a dispute as to whether the governing legal provisions were correctly interpreted by the electoral board, the case presents a purely legal question, which we review *de novo*. *Jackson v. Board of Election Commissioners of the City of Chicago*, 2012 IL 111928, ¶ 47. Finally, mixed questions of fact and law, "questions in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard" ((Internal quotation marks omitted.) *American Federation of State, County, & Municipal Employees, Council 31 v. State Labor Relations Board*, 216 Ill. 2d 569, 577 (2005) (quoting *Pullman-Standard v. Swint*, 456 U.S. 273, 289 n. 19 (1982)), are reviewed under a clearly erroneous standard of review. *Cinkus*, 228 Ill. 2d at 211.

¶ 20    Here, the historical facts have been established, but there is a dispute as to whether the governing legal provision was correctly interpreted by the electoral board. As such, this case presents a purely legal question and we review it *de novo*. Furthermore, the dispute of the governing legal provision involves the interpretation of a statute, which we also review *de novo*. *Vuletich v. United States Steel Corp.*, 117 Ill. 2d 417, 421 (1987). When ascertaining the meaning of a disputed statute, our primary objective is to determine and give effect to legislature's intent. *Lucas v. Lakin*, 175 Ill. 2d 166, 171 (1997). "Legislative intent is best determined by examining the statutory language, which must be given its plain and ordinary meaning." *Id.*

¶ 21                    B. Section 7-10.2 of the Election Code

¶ 22    Section 7-10.2 of the Election Code (10 ILCS 5/7-10.2 (West 2018)) provides that:

"In the designation of the name of a candidate on a petition for nomination or certificate of nomination the candidate's given name or names, initial or initials, a nickname by which the candidate is commonly known, or a combination thereof, may be used in addition to the candidate's surname. If a candidate has changed his or her name, whether by a statutory or common law procedure in Illinois or any other jurisdiction, within 3 years before the last day for filing the petition or certificate for that office, whichever is applicable, then (i) the candidate's name on the petition or certificate must be followed by "formerly known as (list all prior names during the 3-year period) until name changed on (list date of each such name change)" and (ii) the petition or certificate must be accompanied by the candidate's affidavit stating the candidate's previous names during the period specified in (i) and the date or dates each of those names was changed; failure to meet these requirements shall be grounds for denying certification of the candidate's name for the ballot or removing the candidate's name from the ballot, as appropriate, but these requirements do not apply to name changes resulting from adoption to assume an adoptive parent's or parents' surname, marriage to assume a spouse's surname, or dissolution of marriage or declaration of invalidity of marriage to assume a former surname. No other designation such as a political slogan, as defined by Section 7-17, title or degree, or nickname suggesting or implying possession of a title, degree or professional status, or similar information may be used in connection with the candidate's surname."

¶ 23    The statute has three distinct provisions. The first concerns the name a candidate may use on the nomination papers. The candidate may use her "given name or names, initial or initials, a nickname by which the candidate is commonly known, or a combination thereof" and must also use her surname. The second section, which the parties refer to as the "Name Change" section, requires a candidate to list a previous name on her nomination papers as a "formally known as" name if the candidate has changed her name within the last three years. The final provision of the statute concerns the candidate's use of other designations, such as political slogans, and is not at issue here.

¶ 24    The Candidate and the Electoral Board were chiefly concerned with the second provision of the statute, the "Name Change" provision. The Candidate maintained that she was not required to list "Caroline Patricia Golden" as a previous name on her nomination papers because she had not changed her name by using her maiden name. The statute requires the candidate to use the "formerly known as" designation if the candidate has changed her name "by a statutory or common law procedure in Illinois or any other jurisdiction" within the last three years. 10 ILCS 5/7-10.2 (West 2018). The Candidate maintains that she has not changed her name by any "statutory or common law procedure" within the last three years and, thus, this section does not invalidate her nomination papers. We agree. There is no suggestion in the record that the Candidate has changed her name by any statutory or common law procedure in Illinois or any other jurisdiction within the last three years requiring her to list any former names on her nomination papers.

¶ 25    As discussed, however, the statute also contains another provision regarding the name a candidate may use on the nomination papers. The candidate may use her "given name or names, initial or initials, a nickname by which the candidate is commonly known, or a combination thereof" and must also use the candidate's surname. *Id.* We note that the terms "given name" and

"surname" are not defined by the Election Code. In such instances, we must give words their "ordinary and popularly understood meaning." *Carroll v. Paddock*, 199 Ill. 2d 16, 25 (2002). In doing so, our supreme court has consistently looked to Black's Law Dictionary. See *People v. Relwani*, 2019 IL 123385, ¶ 18; *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, ¶ 32; *Palm v. Holocker*, 2018 IL 123152, ¶ 30. Black's Law Dictionary defines given name as "an individual's name or names given at birth, *as distinguished from a family name*." (Emphasis added.) Black's Law Dictionary (11th ed. 2019). Family name, according to Black's Law Dictionary, is synonymous with surname, and is defined as "[t]he family name automatically bestowed at birth, acquired by marriage, or adopted by choice." Black's Law Dictionary (11th ed. 2019).

¶ 26    The hearing officer, and therefore the Electoral Board, mistakenly found that the Candidate's "given name" was "Caroline Patricia Jamieson," including her surname as part of her given name. The ordinary and popularly understood meaning of these terms, however, shows that they are distinct. In this case, therefore, "Caroline Patricia" was the Candidate's given name. At birth, her surname, or family name, was "automatically bestowed" as Jamieson. Following her marriage, however, the Candidate voluntarily acquired a different surname, Golden. For our purposes, it is immaterial whether the Candidate changed her name to "Caroline Patricia Jamieson Golden," "Caroline Jamieson Golden," or simply "Caroline Patricia Golden," as the vital factor is the Candidate's surname, which is Golden.

¶ 27    As the circuit court noted, at her marriage, the Candidate was not required to take on her husband's surname. She nonetheless elected to do so and took the affirmative step of petitioning the supreme court to change her name on the master roll of attorneys from her given name and birth surname "Caroline Patricia Jamieson" to her given name and married surname "Caroline P.

Golden." The Candidate's use of her married surname was consistent following her marriage as evidenced by the exhibits attached to the Objector's petition. The Candidate was admitted to the bar of the United States District Court for the Northern District of Illinois as "Caroline P. Golden" and was registered to vote as "Caroline Golden." Furthermore, in November 2017, she filed nomination papers for the general primary election for the office of Judge of the Circuit Court of Cook County, 4th Judicial Subcircuit, under the name "Caroline Jamieson Golden." In conjunction with the nomination papers, the Candidate submitted a loyalty oath, which she signed as "Caroline Golden." Additionally, in March 2018, the Alliance of Bar Associations for Judicial Screening evaluated the Candidate for the primary election under the name "Caroline Jamieson Golden." Similarly, in August 2018, the Candidate applied for the office of associate judge of the Circuit Court of Cook County under the name "Caroline Patricia Golden." Further evidence shows that the Candidate has been practicing law in Illinois under the names "Caroline P. Golden" and "Caroline Jamieson Golden."

¶ 28    In order to find that the Candidate met all the requirements of section 7-10.2, this court would have to turn a blind eye to the fact that for over a decade the Candidate has practiced law under the name Golden. In order for the Candidate to use that name, she requested that several governmental agencies change her name to Golden, including, the Illinois Supreme Court, the ARDC, the Secretary of State's Office, her mortgage company, and the Cook County Clerk's Office. In addition, all of her legal filings as an attorney occurred under her married name of Golden. She has held public office as a school board member under her married name Golden, and has applied for an associate judge position under the name Golden. She also submitted to the bar associations to evaluate her candidacy for judgeship in 2018 under the name Golden. There has been no information presented to this court showing that she has used the surname Jamieson in

any legal capacity in over a decade. Consequently, under the language of section 7-10.2 of the Election Code, the Candidate was required to list her given name as "Caroline Patricia" and her surname as "Golden." The Candidate's failure to do so violated the terms of section 7-10.2 of the Election Code, which invalidates her nomination papers, necessitating her removal from the ballot for the March 17, 2020, general primary election. See *Jackson-Hicks*, 2015 IL 118929, ¶ 23.

¶ 29                                                    III. CONCLUSION

¶ 30     For the foregoing reasons, we affirm the judgment of the circuit court of Cook County, which reversed the decision of the Cook County Officers Electoral Board.

¶ 31     Affirmed.

¶ 32     Justice Lampkin, dissenting.

¶ 33     I respectfully dissent from the majority's conclusion that candidate Jamieson's nomination papers are invalid and she must be removed from the ballot because she violated the terms of section 7-10.2 of the Election Code (10 ILCS 5/7-10.2 (West 2018)). I find the majority's initial determination that Jamieson did not change her name within the meaning of section 7-10.2 by any statutory or common law procedure within the last three years (*supra*, ¶ 24), to be incongruous with the majority's ultimate conclusion that her nomination petition fails to meet all the requirements of section 7-10.2 because she requested that several governmental agencies change her name to Golden and she used the Golden surname during her legal career when she represented clients, previously ran for office and applied for an associate judge position, and participated in bar association evaluations of judicial candidates (*supra*, ¶ 28).

¶ 34     I would reverse the judgment of the circuit court and instead affirm the decision of the Cook County Officers Electoral Board (Electoral Board), which ruled that Jamieson's nomination papers complied with the mandates of section 7-10.2. Specifically, the Electoral Board held that,

consistent with its reasoning and precedent in *Harris v. Orr*, 17 COEB JUD 18 (Jan. 9, 2019), and *Featherston v. Kowalski McDonald*, 17 COEB CC 03 (Feb. 20, 2018), Jamieson's use of the name "Jamieson" did not constitute a name change requiring the listing of the "formerly known as" designation on her nomination papers. In *Harris*, the candidate used her maiden name to run for office and the Electoral Board overruled an objector's petition, which had argued that the candidate failed to comply with the statutory name change provision of section 7-10.2. In so ruling, the Electoral Board stated that the candidate did not violate the name change provision, the purpose of which was "to force Candidates, who have recently acquired new names in processes outside of the 'ordinary' name changes that occur in life, to divulge those former names." *Harris*, 17 COEB JUD 18; see also *Featherston*, 17 COEB CC 03 (affirming the Electoral Board's decision in *Harris* and reiterating that the statutory name change provision applies to names acquired outside of the ordinary changes that occur in life).

¶ 35    We review *de novo* the issue of the statutory construction of section 7-10.2 (see *Jackson*, 2012 IL 111928, ¶ 47), and the touchstone of our analysis in this case is the Illinois courts' view that a citizen's exercise of the valuable right to hold political office should not be curtailed except by plain provisions of the law (*Marszalek v. Kelenson*, 212 Ill. App. 3d 836, 839 (1991); *McGuire v. Nogaj*, 146 Ill. App. 3d 280, 282 (1986)). The primary purpose of all election laws is to ensure a fair and honest election (*Pullen v. Mulligan*, 138 Ill. 2d 21, 66 (1990)), and Illinois state policy generally favors candidate eligibility and ballot access to allow citizens to vote (*Wisnasky-Bettorf v. Pierce*, 2012 IL 111253, ¶ 22). Furthermore, in determining the legislature's intent from the plain language of the Election Code, this court cannot read into the statute exceptions, limitations, or conditions in conflict with that intent. See *People v. Boclair*, 202 Ill. 2d 89, 100 (2002).

¶ 36 In conformance with the plain language of section 7-10.2, Jamieson's November 2019 nomination petition listed her given names, "Caroline Patricia," and her surname, "Jamieson." See 10 ILCS 5/7-10.2 (West 2018). Also in conformance with section 7-10.2, Jamieson was not required to use the "formerly known as" designation on her petition and submit an affidavit attesting to the dates of a name change within the designated three-year time period because those "requirements do not apply to name changes resulting from *** marriage to assume a spouse's surname." See *id.* Under the plain terms of section 7-10.2, Jamieson's use in her personal and professional life of her surname acquired by marriage, Golden, instead of her surname bestowed at birth, Jamieson, falls under the statutory exception of a name change resulting from marriage to assume a spouse's surname. Furthermore, there is no express provision in section 7-10.2 that requires candidates like Jamieson to use the "formerly known as" designation and submit the requisite affidavit if they decide to use their surname bestowed at birth on their nomination petitions instead of the surname they acquired by marriage. Such a provision would be illogical; nothing in the record indicates that Jamieson, her spouse, and her children consider her to be formerly known as Caroline Golden.

¶ 37 Even if this court were to find that the language of section 7-10.2 was ambiguous, the legislative history establishes that Jamieson does not fall within the class of candidates who must use the "formerly known as" designation and submit the requisite affidavit. Section 7-10.2 was amended in 2007 to add the name change provision at issue in this case. Pub. Act 94-1090, § 5 (eff. June 1, 2007) (amending 10 ILCS 5/7-10.2). According to the debate in the General Assembly, this amendment was intended to deal "with the mischief created by candidates for office who change their legal names to more ballot friendly sounding names in order to take an advantage." 94th Ill. Gen. Assem., Senate Proceedings, Nov. 29, 2006, at 16 (statements of Senator

Harmon). In the instant case, there is nothing mischievous or exploitive about Jamieson's use of her birth surname instead of her married surname in her candidacy for judicial office. Moreover, nothing in the record suggests that the use of her birth surname in this election would somehow mislead or confuse the electorate regarding her identity, credentials or record.